## No. 2305
### Second Circuit

## MRS. MARY WILSON, ET AL. v. HARRIS OIL COMPANY, LIMITED

(November 4, 1925, Opinion and Decree.)

*(Syllabus by the Court)*

1. **Louisiana Digest—Master and Servant —Par. 160 (j).**

In a proceeding under the Workmen's Compensation law of Louisiana Act 20 of 1914 to obtain compensation for the death of a relative it is not enough to show that the death was probably the result of an accident but that such was the case must be made out to a legal certainty.

Appeal from Second Judicial District Court of Louisiana, Parish of Webster, Hon. Robert Roberts, Jr., Judge.

This is a suit filed by the widow and orphans of the deceased to recover compensation for his death under the Workmen's Compensation Law. Defendant denied liability. There was judgment for defendant rejecting plaintiffs' demand and plaintiffs appealed.

Judgment affirmed.

L. K. Watkins, of Minden,. attorney for plaintiffs, appellants.

Pugh and Boatner, of Shreveport, attorneys for defendant, appellee.

### STATEMENT OF THE CASE

REYNOLDS, J. W. W. Wilson died December 2, 1923. On August 20, 1924, this suit was filed by the widow and orphans of the deceased to recover compensation for this death under the Workmen's Compensation Law.

Defendant denied liability. There was judgment for defendant rejecting plaintiffs' demand and plaintiffs appealed.

Judgment affirmed.

### OPINION

The only defense urged in this case that need be considered is, that there is no evidence that shows that accident complained of in any way caused or contributed to the death of the deceased. This is a question of fact that must be decided from the evidence. The district judge, who heard and probably knew the witnesses, decided this question of fact in favor of the defendant.

Doctor R. Butler, a witness for plaintiffs, testified, pages 51 and 52:

"Q. Did you see the original wound; did you open it up?

"A. Yes, I opened up the wound.

"Q. What size was it, to start with?

"A. I just don't know how to answer that but it was a small wound.

"Q. A mere abrasion of the skin?

"A. Yes, sir."

* * *

"Q. That was about five or six weeks prior to the time that you heard of his death?

"A. At least that, yes, sir."

* * *

"Q. Would you say that there was any connection between the healed up wound and the sudden death?

"A. Positively, I could not.

"Q. You could not say that there was any cause and effect, one to the other?

"A. No, sir.

"Q. Doctor, if a man dies suddenly, as has been described relating to the death of Mr. Wilson, what would you say was the cause of that man's death—the immediate cause at the time that he died?

"A. It would possibly be inflammation of the lining of the heart or rupture of a blood vessel—that could cause sudden death; the clot might lodge in the brain or some place like that and cause sudden death. It could be heart failure.

"Q. That would be heart failure?

"A. Yes, sir."

Doctor M. S. Browning, the physician who last treated the wound on deceased's hand, testified, pages 61, 62, 63 and 64:

"Q. Doctor, did you treat Mr. W. W. Wilson?

"A. Yes, sir."

* * *

"Q. About how long after his first treatment did he come back for the second?

"A. I think it was the second day.

"Q. Was his hand better?

"A. Yes, sir, his hand was considerably better; his hand was practically well when he left there. He could use his hand and he showed me in the office,—said, 'see how limber my hand is'. It was practically well I considered."

* * *

"Q. But the infection had gone away when you last saw him?

"A. Oh, yes, I considered it entirely well when he came to me; of course his hand had not gotten back to normal but it was very well started on the way to normal the last time he came to me.

"Q. On the last treatment did you ask him to come back for treatment or did you discharge him?

"A. I told him there was no use to come back at all. I said 'In a few days I consider that you can go back to work', I think that observation was on Friday. He came back to me, I think, Wednesday, Tuesday or Wednesday and I think Friday was the last time I saw him and I told him that by Monday he would be able to resume his usual labor.

"Q. How long was that before you heard of his sudden death, doctor?

"A. Well, I would have to guess at that. It was something in the neighborhood of ten days or two weeks, something like that.

"Q. You have no record of it?

"A. I didn't keep a record because he paid me cash for my services and where they pay cash I don't put it on my book."

* * *

"Q. In the condition that his hand was in at the time that he left you and two weeks thereafter, without any further injury to his hand, is it your opinion that the injury to his hand had no connection with his sudden and untimely death about two weeks later?

"A. I would not think so—no, sir.

"Q. Your opinion is that there is no connection?

"A. My opinion and honest judgment is that it seems to me that if this hurt were going to cause his death at all it certainly would have done it while his hand was in

the height of its infection. I would not think that his hand had any connection with his death whatever."

From this testimony of the only physicians who testified in the case we are convinced that the decision of the district judge is correct.

We are convinced that the witnesses, J. T. Edwards, Mrs. Mary Wilson, P. H. Webb, John C. Baker, W. W. Baker, Mrs. W. W. Baker, Rantz Baker and Richard Baker, who testified for plaintiffs; are sincere in their belief that the injury to deceased's hand, in October was the direct cause of his death in December; but none of them are doctors or trained nurses and their testimony in our opinion fails to overcome the testimony of the doctors, Butler and Browning, physicians of experience and high standing in their profession.

For these reasons the judgment of the district court is affirmed.