## No. 2798

### Second Circuit

---

## DENNIS v. FORTUNA OIL CO.

---

(Nov. 6, 1926. Opinion and Decree.)
(Dec. 11, 1926. Rehearing Refused.)

---

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Master and Servant —Par. 160 (j).**

Where the evidence in a suit by injured employee suing for compensation under the Workmen's Compensation Act No. 20 of 1914, shows that at most there is a probability that the accident had something to do with accelerating an already infected tonsil condition, it falls short of the legal certainty required of plaintiff to prove his case.

2. **Louisiana Digest—Master and Servant —Par. 160 (j).**

Plaintiff, an injured employee suing for compensation under the Workmen's Compensation Act No. 20 of 1914, cannot recover under Section 8, Subsection 1 (e) of the act for disfigurement or permanent impairment of the usefulness of his neck by reason of a sliver of steel penetrating it where the evidence shows that such was not the effect of the accident.

(The recent amendment of Act 20 of 1914 is Act 85 of 1926. Editor's note.)

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. T. F. Bell, Judge.

Action by Robert C. Dennis against Fortuna Oil Company.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Long & McSween, of Shreveport, attorneys for plaintiff, appellant.

Pugh & Boatner, of Shreveport, attorneys for defendant, appellee.

WEBB, J. Plaintiff brings this action under the Employers' Liability Law to obtain judgment on the basis of permanent total disability to do any work of a reasonable character.

The District Court rejected plaintiff's demands and he appealed.

The opinion of the district judge is as follows:

"This is a suit arising under the compensation law, in which plaintiff claims compensation for total permanent disability.

"Plaintiff was a helper in a boiler shop of the defendant company, and while en-

gaged in his work, a sliver of steel was driven through his neck and lodged back of the throat and remained there. He went back to work in about two weeks; worked for a period of approximately three or four weeks, and then quit. He is undoubtedly suffering somewhat at this time, and not able to do heavy manual labor. The crucial question in this case being the cause of his present condition.

"According to the testimony of Dr. Sanderson, the plaintiff is in a very precarious condition; a condition which may cause his death at any time; but likewise, under the testimony of Dr. Sanderson, the sliver of steel now embodied in his neck is not directly, at least, the cause of his present disability. As we appreciate the testimony, all the physicians practically agree that the sliver of steel in his neck could not possibly be the cause of his present condition, unless there was infection from the steel, and none of these physicians could discern any infection. The only possible evidence of infection from this steel is furnished by plaintiff himself in his testimony showing that he had a rising in his ear, and when it bursted another minute piece of steel came out. While it is possible for this minute piece of steel to have worked its way up to the ear, it is, we think, highly improbable, and it is much more probable that the plaintiff received this piece of steel from the outside, while working in the boiler plant, receiving it in the ear and causing the rising in the ear.

"From this, plaintiff has utterly failed to show that his present disability is due directly to the accident. He is, according to all of the physicians, suffering from infected tonsils and infected teeth, and that such tonsils and teeth are the direct cause of his present disability. However, under authority of Kenner vs. Standard Oil Company of Louisiana, 1st Court of Appeal, and authorities therein cited, it is argued that the tonsil condition was superinduced by the injury, or at least accelerated by it. If it be shown by a preponderance of evidence that plaintiff's present condition was superinduced by the injury, or accelerated by it, then he is entitled to recover. It is not sufficient, however, for him to merely show that this condition is

possible, or even probable. It devolves upon him to show with legal certainly that the injury to his neck either brought about the tonsil condition, or accelerated it. On this phase of the case, see Stephens vs. Ohio Oil Co., Court of Appeals, Adv. Shts., No. 6, page 84, and Haddad vs. Commercial Motor Truck Co., 150 La. 327, 90 So. 666.

"This makes it necessary to go over the testimony to ascertain what effect the injury had on his tonsil condition."

Dr. Cassidy testified on page 43, as follows:

"Q. Just assume, doctor, that the conditions as intimated by the defendant are right; that he already had some ailment there, some infection already there; but that he was going about his work all the time, would this steel have been such a missile as could have caused that to become aggravated and to have further lowered his vitality?

"A. Yes, sir, by making it chronically infected the tonsils—any foreign body penetrating or wounding the tonsils could have aggravated the condition and caused a more or less general infection. This steel could cause it by itself or it could have been a contributing factor.

"Q. It could have been a contributing factor to aggravate his condition if nothing else had been the matter with him?

"A. Yes, sir.

"Q. And if he was able to work up to the time that he got this missile, and his condition, his disability to work since he got this missile would it be your opinion that the missile was a factor or the sole cause or contributing cause of his present condition?

"A. Well, I am rather inclined to think it was a contributing cause.

"Q. Could it be the sole cause?

"A. It could be the sole cause.

"Q. But you are of the opinion that it is a contributing cause, though?

"A. Yes, sir.

"Q. You mean by that the exciting or aggravating cause?

"A. I am of the opinion that if it penetrated the throat that was already infected, or in other words, a chronic condition there due to infected tonsils and this missile penetrating the throat proba-

bly aggravated and allowed to flare up an old chronic condition that existed there."

And again, on page 46, same witness testified: ·

"Q. So the question of the aggravation and bringing on of his present condition is a mere possibility and speculation so far as your testimony is concerned?
"A. Yes, sir, but I merely say that it is one of the things that could reasonably happen.".

The only place that Dr. Sanderson gives testimony on this point is found on page 56, as follows:

"Q. Then, doctor, again assume that it is not the sole cause; that there isn't so much infection solely from this sliver, could it be a contributing cause or exciting cause, assuming that he was able to work before this happened and to do heavy work?
"A. Well, the presence of that large foreign substance at that place in such close proximity to the nerves that absolutely carry on life itself, would make me believe that it is bound to have some influence."

Dr. Adair, on page 73, testified:

"Q. And further on that line assume that he has an infected condition already, and the accident itself or the disability following the accident or the steel itself could also be an exciting or contributing factor or factors towards precipitating or producing his present disability at the time, present time—that is also true, isn't it?
· "A. I think it is possible that they could, yes—you will understand there that I am saying that it is possible not probable.
"Q. I understand. Now, the probabilities are—I am going to get to the probability; now, in an accident of a serious nature with an already latent deformity it will probably excite it to some extent, more or less, wouldn't it, doctor?
"A. I think that is correct.
"Q. And the tonsils of the man—if the man already had an infected condition, the steel passing through the ear, coupled with

a resistance that would naturally be lowered, would be susceptible of producing worse effects than would otherwise happen?
"A. Yes.
"Q. That is the realms of probability?
"A. That is probable."

And again, on page 75 and 76, the same witness testified:

"Q. Then there is no way of concluding the extent or the degree to which this accident could be connected with his present condition and this piece of steel entering his neck, which may have accelerated that process, is there?
"A. No, except that it is a very small probability to start with.
"Q. Do you mean that it is a very small probability that it accelerated it at all?
"A. That is what I mean, yes."

Dr. Pirkle testified, in general, that he did not think that the sliver of steel had any connection, either directly or indirectly, with the present condition of the plaintiff, but that his present condition was due entirely to his infected tonsils and teeth.

About the best we can get out of this testimony is that there is a possibility, or at most a probability, that the accident had something to do with the tonsil condition, but this falls short of the legal certainty required of a plaintiff in proving his case.

Plaintiff contends, in this court, that if the evidence does not warrant a judgment on the basis of disability, that he is entitled to judgment under paragraph (e) subsection 1 of section 8 of the act, which reads as follows:

"In cases not falling within any of the provisions already made, where the employee is seriously, permanently disfigured about the face or head, or where the usefulness of a member or any physical function is seriously, permanently impaired,

the court may allow such compensation as is reasonable in proportion to the compensation hereinabove specifically provided in cases of specific disability above named, not to exceed sixty-five per centum of wages during one hundred weeks."

The evidence, however, does not show that there was any serious disfigurement of the plaintiff's neck caused by the sliver of steel penetrating it; neither does it show that the usefulness of that member was impaired; but, on the contrary, it indicates that plaintiff has no difficulty in eating or talking or in moving his neck, and while the plaintiff claims that his hearing was impaired, we are of the opinion that this is attributable to the rising in his ear, which the evidence does not show was. caused by the injury.

For the reasons assigned by the district judge and herein, the judgment is affirmed.