No. 2857

Second Circuit

---

KING v. RAPIDES PACKING COMPANY, INC., ET AL.

---

(January 28, 1927. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Appeal—Par. 625.**

The finding of the trial court on a question of fact will not be disturbed on appeal unless manifestly erroneous.
    Humble Oil & Refg. Co. vs. Michiels, 2 La. App. 337.

2. **Louisiana Digest—Master and Servant —Par. 160 (j); Evidence—Par. 351.**

An employee suing for compensation under the Employers' Liability Act must make out his case by a fair preponderance of the evidence.
    DeGruy vs. Cire & Delhoimer, 4 La. App. 558.

3. **Louisiana Digest—Master and Servant —Par. 160 (j); Evidence—Par. 340, 343, 344.**

The testimony of a reputable oculist that he had examined plaintiff's eye with the aid of an opthalmoscope and that the examination disclosed that the sight of the eye had been destroyed months before by choroditis is not overcome by the uncorroborated testimony of the plaintiff that he could see by means of the eye until a few days before.

Appeal from the Ninth Judicial District Court of Louisiana, Parish of Rapides. Hon. Leven L. Hooe, Judge.

Action by Ned King against Rapides Packing Company, Inc., et al.

There was judgment for defendants and plaintiff appealed.

Judgment affirmed.

Isaac Wahlder, of Alexandria, attorney for plaintiff, appellant.

Thornton, Gist & Richie, of Alexandria, attorneys for defendants, appellees.

STATEMENT OF THE CASE

REYNOLDS, J. Plaintiff sues under the Workmen's Compensation Law of Louisiana to recover damages for the loss of the sight of his left eye alleged to have been caused by a piece of cottonseed hull lodging in the eye.

Defendant denied liability and alleged that plaintiff did not lose the sight of the eye while he was in its employ.

On these issues the case was tried and there was judgment for defendants and plaintiff appealed.

OPINION

In this case plaintiff seeks compensation for the loss of the sight of his left eye.

At about four o'clock in the afternoon on March 26, 1926, while performing his duties in defendant's employ, a piece of cottonseed hull lodged in his left eye; but he continued to work during the remainder of that day. The next morning he complained to his employer about the accident and was taken to Doctor E. R. Gandy, a reputable oculist of the city of Alexandria, Louisiana, for treatment.

Doctor Gandy removed the piece of hull from the eye and the inflammation resulting therefrom disappeared in a few days, but plaintiff complained that he could not see out of the eye.

Doctor Gandy thereupon examined plaintiff's eye with the aid of an opthalmoscope and discovered that the sight had been destroyed long before by choroditis. He testified, pages 13, 14, 15, 16, 17, 18, 19, 20:

"Q. Just state to the Court what condition you found of his eye?
"A. * * * I then dilated his pupil and looked into it, and I discovered that he was really blind in that eye, as far as seeing at a distance was concerned; it was due to an old choroditis; that is a condition in which the choroid has been destroyed; and when that is punctured by disease the patient is blind; and I know positively that that is what caused his blindness.
"Q. The choroid, is that inside of the eye?
"A. Yes, sir; the very background of the eye, on the inside.
"Q. Was there any recent injury to that choroid at all?
"A. None whatever.
"Q. Was this injury from the hull a superficial injury or an internal injury?
"A. A superficial injury.
"Q. Could that slight abrasion that you found on Ned King of the nature to have caused the condition which you found in the choroid which caused his blindness?
"A. No; a foreign body entering the eye might destroy it, and even an abrasion, which is a superficial thing, might have

infected it so that it might have involved the whole eye, but in this case it did not.
* * * *
"Q. What usually causes choroditis?
"A. I am quite sure that this was syphillis.
"Q. Can you tell by looking into the eye with your scope whether or not this condition of the choroid was of recent happening or of a more earlier date?
"A. Yes, sir; you can.
"Q. With reference to the time that that damage was done to the choroid, please tell when you think it was?
"A. I could not say; it might have happened in childhood. It was back behind this many months, and perhaps years.
"Q. That condition could not have happened from January 12th up until the day you discovered the choroditis?
"A. No, sir; not the picture that I saw in his eye; because it was chronic and not recent. Any recent choroditis would have been a very different puncture.
"Q. If this boy says he was not blind before you looked into his eye, he is mistaken?
"A. Yes, sir, he is mistaken about that; he was blind before he got anything into his eye.
"Q. Could he possibly have had normal vision in his eye, in the condition in which you found it, if he had not had the abrasion?
"A. No, sir, he certainly could not.
"Q. Doctor, could this boy read and write?
"A. I think not; no, sir; he didn't know his letters.
"Q. From your experience as an oculist, do you ever run across patients who have been practically blind and did not know it?
"A. Yes, sir.
"Q. Does that most frequently occur?
"A. Yes, sir; and you might find it in people of more intelligence than this boy; that often happens.
* * * *
"Q. Can a man have that trouble without knowing it?
"A. Yes, sir, he can; he might have choroditis in which his eye would be violently inflamed and might have it without knowing it. It destroys the vision sometimes before you find the condition.

The eye would be perfectly normal, seemingly, but when you would look in there you would find the trouble.

"Q. From treating this man and examining his eye, it is your opinion that the abrasion from getting the hull in the eye had absolutely nothing to do with the blind condition?

"A. I am definitely sure of that; in fact, I know it.

\* \* \* \*

"Q. Isn't it possible that this inflammation caused by the lodging of a foreign substance in Ned King's eye caused this choroditis to take a more progressive form?

"A. It is not; the condition of Ned King's eye was just like a scar on your hand, and it had been there a long time; we know that; if we don't know that when we look into the eye, we don't know anything about the eye.

\* \* \* \*

"Q. Assuming, Doctor, that Ned King had dormant choroditis at the time of the accident to his eye, would you or would you not say that the injection of this cottonseed hull or a lesion to his eye had a tendency to make it active?

\* \* \* \*

"A. It did not in his case; it is chronic, permanent, simple choroditis, and he has had it for years and years and years.

"Q. Did you or did you not tell Mr. Steadman and Ned that his eye would be all right within three or four days, and to come back.

'A. Yes, sir; I expected it to be, on account of the mildness of the injury that he had.

\* \* \* \*

"Q. Had this man had dormant choroditis would it be possible for it to become active within three or four days and destroy his eye?

"A. No, sir; that would not be possible; an active chorodites will run from four to six weeks before it becomes chronic.

'Q. When you looked into this man's eye you saw an old scar that had been there for some time?

"A. Yes, sir; it looks like you would take a punch and punch a piece of leather.

"Q. And that old scar was the cause of the blindness and not the recent injury?

"A. It certainly was."

This testimony of Doctor Gandy that the sight of plaintiff's left eye had been gone for years is not contradicted by the testimony of any other oculist in a position to know the facts; and the testimony of Doctor Gandy that plaintiff for years had not been able to see with his left eye is based on physical facts as to the conditions he found to exist in the plaintiff's left eye.

The conditions testified to by Doctor Gandy could have been examined into by other oculists and if he was in error this could have been made to appear by the testimony of other oculists; but the plaintiff, upon whom rested the burden of proving that the loss of the sight of his left eye was the result of the piece of cottonseed hull getting into the eye, did not see fit to introduce in evidence the testimony of any other oculist; and we are convinced that the uncorroborated testimony of plaintiff himself that he could see with his left eye up to a short time before Doctor Gandy examined it does not overcome the testimony of Doctor Gandy that he had lost the sight of the eye long before.

Plaintiff's testimony that he could see with the eye up to the time he was examined by Doctor Gandy may have been given in perfect good faith. He could easily have been mistaken as to the fact. Doctor Gandy, the oculist, who was in position to know, testified, page 15:

"Q. From your experience as an oculist, do you ever run across patients who have been practically blind and did not know it?

"A. Yes, sir.

"Q. Does that most frequently occur?

"A. Yes, sir; and you might find it in people of more intelligence than this boy; that often happens."

The trial judge who heard the witnesses testify and observed their demeanor on the witness stand accepted Doctor Gandy's testimony as decisive of the issue in this case. In our opinion his opinion is well supported by the evidence in the case.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed.