No. 2859

Second Circuit

---

REYNOLDS v. HOTEL YOUREE CO., LTD.

---

(June 28, 1927. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Master and Servant —Par. 160j.**

The uncorroborated testimony of a plaintiff that he had sustained an impairment of a physical function in his side, shoulder, leg and foot, will not warrant a judgment in his favor when his testimony is in direct conflict with that of all the physicians who testified in the case, who, after a physical examination of him, aided by x-ray exposures, to the effect that plaintiff had not sustained impairment of any physical function.

Upshaw vs. Triangle Drilling Co., 5 La. App. 224.

Fuller vs. Robinson Const. Co., 5 La. App. 242.

2. **Louisiana Digest—Master and Servant —Par. 160j.**

Under the Workmen's Compensation Law of Louisiana a plaintiff carries the burden of making out his case by a fair preponderance of the evidence.

King vs. Rapides Packing Co., 5 La. App. 424.

DeGruy vs. Cire & Delhomer, 4 La. App. 552.

(The recent amendment of Act 20 of 1914 is Act 85 of 1926. Editor's note.)

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. J. H. Stephens, Judge.

Action by Oliver Reynolds against Hotel Youree Company, Limited.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Long & McSween, of Shreveport, attorneys for plaintiff, appellant.

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for defendant, appellee.

STATEMENT OF THE CASE

REYNOLDS, J.  Plaintiff sued defendant for compensation under Clause (e) of Subsection 1 of Section 8 of the Workmen's Compensation Law for the permanent impairment of a physical function.

Defendant filed an exception of no cause of action and, reserving its rights under the exception, filed an answer denying liability.

The exception was overruled and on trial of the case on the merits there was judgment rejecting plaintiff's demand and dismissing his suit and he has appealed.

OPINION

Defendant does not press its exception of no cause of action, and therefore it is not necessary for us to pass upon it.

Plaintiff testified as to his injuries (pages 3-7):

"Q. Are you suffering from any trouble now?

"A. Yes, I have been. And my leg bothers me at all times—that is, after I do hard walking or any hard work. And also at night it bothers me so that I can hardly sleep.

\* \* \* \*

"Q. Is there anything the matter with that left foot?

"A. Well, I have to wear an arch support up there all the time to be able to get around.

"Q. You have to use that arch support to get around even like you do now?

"A. Yes, sir.

\* \* \* \*

"Q. You say that your entire left leg hurts you? Explain how that hurts you; where you feel the most pain and how it feels.

"A. Well, in the muscle there at all times—that is after I do any hard work or heavy lifting or anything like that. It bothers me at night; when I try to sleep it bothers me lots.

"Q. Does it pain you?

"A. Yes, sir.

"Q. Does it pain you when you walk around ordinarily like the walking you have done today; does that pain you?

"A. Yes, sir; sometimes.

\* \* \* \*

"Q. Has it been bothering you continuously since that time?

"A. Yes, sir."

Contradictorily to this testimony of plaintiff's, Doctor J. E. Slicer testified (pages 17-24):

"Q. Doctor, did you have occasion to see Mr. Reynolds and treat him at any time?

"A. Yes, sir.

\* \* \* \*

"Q. What did you find when you first examined him?

"A. I found him complaining a great deal of his left shoulder on which there were some slight lacerations, to which I administered first aid treatment and had him taken upstairs to a room. Later that day I sent him up to the x-ray man to see if there had been any damage done to the shoulder.

"Q. To whom did you send him?

"A. Doctor Adair. Doctor Adair's report to me was negative for bony injury.

\* \* \* \*

"Q. Was there any broken flesh that you could see?

"A. Well, there was no complete break of the skin, no, sir. There was some, what we call 'brushed skin,' where some of the layers of the skin were brushed off but not entirely broken.

"Q. Did you make an examination to see if you could find any injury to his left side?

"A. Yes.

"Q. Did you find any?

"A. Only what I have just spoken of.

"Q. Were there any injuries that you could find necessitating any treatment of any kind?

"A. For two or three days these lacerations had to be dressed but they soon disappeared because they were only of a minor character.

"Q. That is, on the shoulder?

"A. Yes, sir.

"Q. Were they superficial or did they go deeper?

"A. They were only superficial.

\* \* \* \*

"Q. From your observation of him and having him under your care and observation, is there any reason that you could ascertain why there should be any disability of any kind to him from that accident?

"A. I have never been able to satisfy myself that there was any permanent disability in that case whatsoever.

"Q. When you say permanent disability, just what do you mean?

"A. Well, any destruction of tissue or any dislocation or any bony or muscular injury; any ligaments strained or torn. 1 have never been able to discover any of these things. The only evidence that I had of any injury whatsoever was his statement to go on.

"Q. Is there any reason that you know of at this time why he should limp?

"A. None whatever.

*  *  *  *

"Q. Had he complained about his foot previously?

"A. No, sir.

"Q. Then when he complained of his foot, what did you do?

"A. I examined it and from my examination I couldn't discover any injury. I then had an x-ray made to see if there had been any damage and the x-ray report was negative. And I told him I was at a loss to know what I could do; that I couldn't satisfy myself that there was any injury to him at all.

*  *  *  *

"Q. Can you ascertain that there should be any reason for any pain at this time so far as that accident is concerned?

"A. None, whatever.

"Q. Or any disability there?

"A. No, sir.

*  *  *  *

"Q. Doctor, from your examination and attention to him while he was under your observation and care, would you say that the usefulness of a member or any physical function has been seriously or permanently impaired at this time?

"A. No, sir.

*  *  *  *

"Q. But, I say, if that be a fact then there is a more or less permanent impairment or disability of the member?

"A. Your question is one that is difficult for a doctor to answer. The only way I can answer that question is to tell you I took note of every complaint that he made to me, examined the parts with my eyes and hands, and then sent him to the x-ray expert, and the result of all of these examinations did not disclose any disability whatsoever that we could find."

Doctor M. L. Adair testified (pages 27-30):

"Q. Did you have occasion to make pictures or an examination of Mr. Reynolds, the plaintiff in this case, at any time?

"A. I did. On December 13th Mr. Reynolds was sent to me by Doctor Slicer with orders to examine his left shoulder and anything else that I thought might throw any light on his injuries. I made a radiograph of the left shoulder on December 13, 1925, which showed no fracture or dislocation. At the same time I examined his left knee where he complained of pain and found no evidence of fracture or dislocation of bone or injury there. I also examined his left leg and knee just above the ankle and found no evidence, and I examined his left foot, which was negative, with no evidence of injury.

*  *  *  *

"Q. From the x-rays which you took and the examination which you had the opportunity to make, and the times that you saw him and examined him, is there any reason that you can discover for there being any injury or disability to the plaintiff at this time?

"A. No. I could never find any evidence after the first time he was in the office. At that time he had a few scratched places, but I have never been able to find anything that would indicate a serious injury.

"Q. Are there any reasons that you could assign at this time, from an examination and the pictures that you made, why he should limp?

"A. No.

"Q. From the examination and pictures that you made would you say or could you

say there were any reasons for the usefulness of a member or any physical function being seriously or permanently impaired?

"A. Not from my examination; no.

\* \* \* \*

"Q. Is there any reason that you could ascertain from your pictures why there should be any pain or inconvenience or disability as the result of that accident?

"A. No; my x-ray pictures are absolutely negative; showing no indication of pathology whatever.

"Q. You made somewhat of an examination outside of the x-ray, did you not?

"A. Yes, sir; the first time he was in the office I went completely over him to find out what to x-ray, as Doctor Slicer had told me to x-ray anything and everything that I thought would throw any light on the case.

"Q. Did you find anything from that physical examination to indicate that there was any disability or pain?

"A. No, sir."

All the evidence in the case shows that plaintiff has failed to discharge the burden resting upon him to make out his case by a fair preponderance of the evidence and that he did not suffer the impairment of any physical function.

The judgment appealed from is correct and accordingly is affirmed with costs.