### CODIFER v. SHELL PETROLEUM CORPORATION.
### No. 14566.

Court of Appeal of Louisiana. Orleans.
Jan. 15, 1934.

See, also, 146 So. 733.

Frederic C. Querens, of New Orleans, for appellant.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellee.

WESTERFIELD, Judge.

The question presented by this appeal is the duration of disability suffered by plaintiff, Louis P. Codifer, an injured workman, who brings this suit under the compensation statute (Act No. 20 of 1914 as amended), Codifer, a carpenter, forty-one years of age. was employed by the Shell Petroleum Corporation, defendant herein, and was injured on August 12, 1929, while so employed, when a piece of timber fell, striking him on the neck and head. He was paid compensation at the rate of $20 a week from the date of the accident until February 1, 1930, when he was discharged by physicians in the employ of defendant as having fully recovered. Codifer contends that his discharge was premature for the reason that he had not recovered on February 1, 1930, and was still suffering disability on the 2d day of June, 1931, when the case was tried.

The trial court rendered judgment in favor of defendant, dismissing plaintiff's suit, and plaintiff has appealed.

At the time of the injury to plaintiff he was working at the Good Hope refinery of the defendant company in Good Hope, La., and was treated by the resident physician of the defendant, Dr. Landry, who at first thought his injuries superficial, but, as a matter of precaution, referred him to Dr. Edrington of St. Charles parish for the purpose of having an X-ray made, and later, when the serious character of the injury developed, referred plaintiff to Drs. Phillips & Harrison in New Orleans, where he was treated by Dr. J. Kelly Stone, associated with that firm. Dr. Stone found Codifer to be suffering from a "fracture of the right transverse process of the fourth cervical vertebræ." He sent him to the Baptist Hospital, where he remained for about ten days, during which time a steel brace was prepared for him, the object of which was to prevent unnecessary movement of his head and neck in order to promote healing of the fractured vertebræ. He wore this brace until shortly before his discharge by the physicians of defendant.

In this case, as in all other compensation cases where there is a dispute over the duration of the disability, the medical testimony is of prime importance. Dr. P. T. Landry, Dr. N. K. Edrington, Dr. J. Kelly Stone, Dr. Frederick L. Fenno, and Dr. Leon J. Menville, a radiologist who took an X-ray of defendant's spine, are the only physicians who testified in the case. Of these five experts, the only one who may be considered as having corroborated plaintiff's claim is that of Dr. Fenno, a specialist in mental and nervous diseases, who expressed the opinion, based on an examination of Codifer on February 27, 1931, and a subsequent examination six months thereafter, that his disability continued up to the point of his last examination. Dr. Fenno found a tenderness over the mid-cervical region, as well as over the entire cervical spine with a generalized cutaneous hyperalgesia on the left side of the body, together with a "high glove anesthesia" of the left hand and arm. A "high glove anesthesia," the doctor explains, is the loss of sensation in that part of the hand and forearm, which might be covered by a high glove, or

within two or three inches of the elbow. Following Dr. Fenno's first examination, in a report addressed to counsel for plaintiff, which is in the record, we find the following: "Prognosis excellent on settlement of a claim for indemnity." When questioned as to the meaning of this statement in his letter, Dr. Fenno said that a settlement of plaintiff's claim, in his opinion, would have an excellent effect, a circumstance not unusual in diseases of the nervous system and without sinister import.

Dr. Stone, who treated plaintiff during the period of admitted disability, or from August 15, 1929, to February 1, 1930, declared that in his opinion Codifer had completely recovered on the day of his discharge, February 1, 1930, and that he was confirmed in this opinion by an examination which he made of Codifer in July, 1931, during the trial of the case below. The latter examination convinced him that there was nothing organically wrong with Codifer, and that, in regard to the alleged "high glove anesthesia" of the left hand and arm, this condition in his opinion did not exist for the reason that, when testing Codifer's forearm by manipulation, he would exclaim that he could not feel the contact of Dr. Stone's fingers when he could not be aware of the fact that the doctor had touched him except through his sensory nerves, because his eyes were closed at the time. Moreover, calluses were found on the hands of Codifer, which, it is explained, can only be due to the excessive use of the hands. When an attempt was made to determine the capacity of Codifer to grip his hands by means of an instrument called a dynamometer, used for that purpose, Codifer professed inability to exert the necessary muscles without any apparent reason.

Dr. Edmund McC. Connely, also a specialist in nervous diseases, examined Codifer on November 6, 1929, and again on July 1, 1931. He testified that he could find nothing wrong with the plaintiff and that he did not believe that plaintiff suffered from hysterical paralysis, a mental condition which sometimes produces actual disability without organic or functional disorder.

Dr. Leon J. Menville, a specialist in radiology, made a radiograph of the plaintiff's spine on August 24, 1931, and declared that the picture was negative, showing no fracture or calcified area around the right transverse process of the fourth cervical vertebræ, or anything else that might cause pain or lack of sensation in the plaintiff's forearm. The spine, according to Dr. Menville, was in as good alignment and condition as it was before the injury.

■■ There is, therefore, only the statement of the plaintiff himself, corroborated to some extent by Dr. Fenno, as against the testimony of Drs. Landry, Edrington, Stone, and Menville, with the result that there is an overwhelming preponderance of medical testimony unfavorable to the contention of plaintiff. The plaintiff in a compensation case must make his case reasonably certain. Haddad v. Commercial Motor Truck Co., 150 La. 327, 90 So. 666; Furlow v. Maison Blanche Co. et al., 2 La. App. 351, 354; Stevens v. Ohio Oil Co., 3 La. App. 81; Wilson v. Harris Oil Co., Ltd., 3 La. App. 195; Purvis v. Ware Const. Co., 5 La. App. 684; Dennis v. Fortuna Oil Co., 5 La. App. 709; King v. Rapides Packing Co., Inc., 5 La. App. 424; Reynolds v. Hotel Youree Co., 6 La. App. 790; Hinton v. Louisiana Cent. Lumber Co. (La. App. 2d Cir.) 148 So. 478; Gradney v. Standard Fruit & S. S. Co. (La. App.) 144 So. 541; Lee v. Southern Surety Co. (2d Cir.) 14 La. App. 393, 123 So. 502, 127 So. 36.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.