No. 3101

Second Circuit

---

ELIX v. GLASSELL-WILSON COMPANY, INC.

---

(November 8, 1928. Opinion and Decree.)

---

George T. McSween, of Shreveport, attorney for plaintiff, appellant.

Alex F. Smith, of Shreveport, attorney for defendant, appellee.

### STATEMENT OF THE CASE

REYNOLDS, J. This is a suit under the Employers' Liability Act.

Plaintiff alleges that he was employed by defendant and while in the performance of his duties fell a distance of fifteen to twenty feet from a ladder onto a concrete floor and received injuries to his right side, arm, intestines, kidneys, lung, heart and all his vital internal organs.

Defendant admitted that plaintiff was employed by it but denied the other allegations of the petition.

On these issues the case was tried and there was judgment rejecting plaintiff's demands and dismissing his suit and he has appealed.

### OPINION

Plaintiff testified that while working for defendant on the court house in Shreveport, Louisiana, he fell from the third to the second floor, a distance of from fifteen to twenty feet, and struck on his right side, and that he was carried to a hospital and remained there about two weeks and then returned to work and after working two hours stopped because of having "trouble with my (his) stomach."

Asked what injuries the fall caused him, he said:

"It occasioned swelling in the knee, stiffening, soreness on the inside, kidneys upset. All the machinery on the inside ruined."

The accident occurred on February 9, 1927, and the suit was filed on February 19, 1927, or ten days after the accident. The trial took place on March 18, 1927, or a month after the suit was filed and two months and ten days after the accident.

Doctor Louis Abramson testified that he had made a physical examination of plaintiff a few days before the trial, and that:

"Q. Just state the results, what you found to be the matter with him. What was his condition? State the results of your examination or investigation?

"A. The only thing I found, insofar as the examination that I made is concerned, he had chronic gonorrhea.

* * *

"Q. I will ask you whether or not, in your opinion, this affliction or disease antedates the accident which happened on February 9th of this year?

"A. Well, I couldn't say positively about that, whether it did or not, but my impression is that it did."

The plaintiff had testified:

"Q. Now you say that your kidneys were injured. How do you know that?

"A. They are sore.

"Q. Did you pass any blood?

"A. Yes, sir, I did.

* * *

"Q. This blood was passed from your kidneys? You know that?

"A. I suppose that is where it come from. It come out of there somewhere."

And, as to this, Doctor Abramson testified:

"Q. Now, doctor, assuming that this negro passed blood, and that blood showed up in the analysis of the urine by—I don't know what kind of process?

"A. Microscopic?

"Q. Microscopic process. Would you say that the injury caused that or that the gonorrhea caused that?

"A. Well, it is almost a constant attendant of gonorrhea—blood in the urine. So I could not tell whether either one caused it."

No other witnesses than these two testified in the case.

The plaintiff was asked:

"Q. What are you doing now, Osborn?

"A. Not doing anything.

"Q. You are not working?

"A. No, sir.

"Q. Have you tried any more since the time that you tried to work?

"A. I have been taking treatment from the doctor.

"Q. Oh, yes, Dr. Stamper?

"A. Yes, sir; he has been treating me.

"Q. What kind of treatment?

"A. I don't know what kind of medicine he is using, but the last treatments evidently they looked into the kidneys and the bladder and they dilated it—I guess that is what they call it; I don't know what it is, and then they got some pulse from somewhere.

"Q. What?

"A. Pulse.

"Q. Pus?

"A. Yes, sir. Pus."

Plaintiff did not summon Doctor Stamper to testify as to the nature of his ailment and offered no excuse for not doing so.

The evidence fails to show any causal relation between any disability from which plaintiff may have been suffering at the time of or before the trial and the accident that befell him, but, on the contrary, indicates that plaintiff's disability, if any, is the result of chronic gonorrhea from which he was suffering.

We have carefully read the record and cannot say that the District Judge erred in holding that the plaintiff failed to make out his case by the preponderance of the evidence required of all plaintiffs, those suing under the Employers' Liability Act as well as others.

The judgment appealed from is affirmed.