No. 809

First Circuit

———

BAILEY v. GULF REFINING CO. OF LA.

———

(June 16, 1931. Opinion and Decree.)

———

Griffin T. Hawkins, of Lake Charles, attorney for plaintiff, appellant.

J. S. Atkinson, of Shreveport, and McCoy, Moss & King, of Lake Charles, attorneys for defendant, appellee.

ELLIOTT, J. Forest E. Bailey alleges that while employed by Gulf Refining Company of Louisiana in its production department, and while in the act of holding secure the tongs while a fellow employee was driving a steel casing key into the tongs with a hammer, a small piece of steel flew from the key and hit him in his right eye. The accident occurred August 9, 1925.

That he was sent by Gulf Refining Company of Louisiana to Dr. Foreman, who, within two or three hours from the time of the accident, succeeded in extracting the steel from the ball of his eye and gave him treatment on said account.

That his eye was inflamed for 2 or 3 weeks after the accident before it cleared up. That continually from the date of the injury the vision of his eye commenced to blur, and his sight was not normal, gradually growing worse and worse until on or about December 15, 1928, when he became totally blind as a result of traumatic cataract in said eye, caused by said injury.

He alleges knowledge of the accident on the part of the Gulf Refining Company of Louisiana and notice of his loss. Alleges in the alternative and in the event that the court holds that the cataract was not traumatic, but complicated, then in that event that the injury to his eye activated the permanent disease in his eye, causing a complicated cataract to form in his eye, the blow causing the cataract to form in his eye, even though there was no existing disease of the eyeball.

There was judgment for defendant, and plaintiff appealed.

Judgment affirmed.

He claims of the defendant weekly compensation at the rate of $20 per week for a period of 100 weeks.

Plaintiff's suit was filed August 15, 1929.

Defendant admits the employment, but denies the alleged injury; denies that it sent plaintiff to Dr. Foreman; that it received from the plaintiff notice of any injury sustained by him within 6 months from the date of the alleged injury, as required by the Employers' Liability Act, No. 20 of 1914, secs. 11, 13 and 14, and pleads said failure to give notice as a bar to plaintiff's suit. It further alleges that the alleged cause of action having arisen more than one year prior to the institution of the suit, plaintiff's suit is barred by the prescription of one year. It therefore pleads the prescription of one year provided by section 31 of said act in bar of plaintiff's suit.

For written reasons there was judgment rejecting plaintiff's demand. The plaintiff has appealed.

As far as the want of service on defendant of notice of the injury, the evidence shows that plaintiff, working in the night shift, was struck in the right eye in the way alleged in his petition about 4 o'clock a. m. on August 9, 1925. Mr. Lamb, foreman in the employ of defendant, in charge of the gang of which plaintiff was a member, claims that he could not remember the incident, if it took place. He admits that it was his duty to give notice to defendant of injury to any of the crew working under him, but he could not remember giving notice of any injury to the plaintiff. The injury to the plaintiff was testified to positively by Francis Humble, a member of the crew. The fact is indirectly corroborated by plaintiff's wife and by Dr. Foreman, the physician in the employment of defendant at the time, who admits that on or about the time mentioned he received a call from the plaintiff and removed some foreign particle from his eye.

There is no contention now that plaintiff was not injured as he alleges.

The law on the subject, Act No. 20 of 1914, sec. 11, as amended by Act No. 247 of 1920, provides:

"Want of notice or delay in giving notice shall not be a bar to proceedings under this act if it be shown that the employer, or his agent or representative, had knowledge of the accident, or that the employer has not been prejudiced by such delay or want of notice."

We regard it as more than probable that Mr. Lamb, defendant's agent, had knowledge of the accident. Dr. Foreman had knowledge received from plaintiff. But suppose the knowledge received by Dr. Foreman not sufficient, it is not claimed that defendant has been prejudiced by delay in getting notice nor by the want of notice. The defense based on want of notice is not sustained.

As for the prescription of one year pleaded as a bar to the action, it is uncertain when plaintiff became aware of the loss of his eye. It is not satisfactorily established that he knew it a year previous to the filing of this suit. We therefore do not base our judgment on the question of prescription.

Our conclusion is that the evidence does not satisfactorily show that the cataract which caused plaintiff's blindness in his right eye directly or indirectly grew out of the injury received August 9, 1929.

The plaintiff testifies that upon being struck in the eye, which was near daylight, he immediately went home. His wife bathed his eye and then drove him in an automobile to see Dr. Foreman who removed from his eye a particle of steel about the size of a pinhead and administered treatment. That he returned to his work and worked the night following his injury and continued to do so for month after month thereafter, though his eye continued to hurt him.

Dr. Foreman, testifying on the subject, remembered that he looked on the injury as not serious. Dr. Foreman was not a specialist in eye diseases. Plaintiff alleges that his eye cleared up in 2 or 3 weeks after the injury.

Plaintiff did not apply for any further medical treatment to his eye until September, 1926, more than a year afterwards, when he applied to Dr. Brooks for treatment to his eye.

Dr. Brooks, testifying on the subject, could only state from a prescription that he had given plaintiff, a wash for his eye. His testimony indicates that he could not have considered the eye trouble serious.

There is no further evidence showing that plaintiff had trouble with his eye, but in March, 1928, about 18 months after the accident in question, Dr. Cherry, in the employment of defendant, was making an examination of its employees, and upon examining plaintiff's eye discovered that he was nearly blind in his right eye as a result of a cataract, and recommended that plaintiff consult Dr. Iles, an eye specialist at Lake Charles. Plaintiff testifies that he did so, but he says he was not blind at that time, and we can find nothing in the evidence concerning what Dr. Iles found at this time.

Dr. Iles, appointed by the court to examine plaintiff's eye, testified that he had examined it twice recently. In saying that he had examined it twice recently he evidently did not refer to an examination made in March, 1928, pursuant to suggestion of Dr. Cherry, but to examinations made just previous to the trial in October, 1929. His testimony is very full, and, having been appointed by the court at the request of both parties, his evidence may be considered as not influenced by employment.

Dr. Iles gave it as his opinion that plaintiff's sight in his right eye was totally lost as a result of cataract caused by trauma, but that the cataract did not result from the injury inflicted by the small particle of steel which Dr. Foreman removed from plaintiff's eye in August, 1925. He gave it as his opinion that the injury then received was not sufficient injury to produce a cataract. Just when the cataract commenced to form in plaintiff's eye is not shown, but the eyesight was entirely gone at the time of the trial in October, 1928. According to Dr. Cherry, it was impaired, but not entirely gone in March, 1928.

Plaintiff testifies that he did not know the sight of his right eye was gone until he tried to shoot a rifle in December, 1928. Plaintiff's wife testifies on this subject:

"Q. Mrs. Bailey, when did you find out for the first time that his eye was hurt? (Evidently means out.)
"A. In December.
"Q. What December?
"A. This last December.
"Q. How did you find it out?
"A. He went to shoot some little mice and when he put the gun up to shoot the mice, why he could not see the sight of the gun.
"Q. Did he use the rifle some time previous to that, Mrs. Bailey?
"A. Yes, sir. He had used it several times."

Dr. Lapat, specialist in eye injuries, in the employ of defendant, examined plaintiff in June, 1929, and gave his testimony at length on the trial of the case. He gave it as his opinion that the cataract which had caused the loss of the sight of plaintiff's right eye had not been caused by trauma, but agreed with Dr. Iles that an injury such as plaintiff is shown to have received in August, 1925, could not in his opinion cause a traumatic cataract, because the injury was not sufficient. He attributes the cataract to other causes.

Dr. Loomis, an eye specialist of long experience, called by plaintiff, gave testimony more favorable to plaintiff than either Dr. Iles or Dr. Lapat had done, but, taking his testimony as a whole, the injury of August, 1925, cannot be said with reasonable certainty to be the cause of the cataract. In one part of his testimony he speaks of the injury as the probable cause, but later he speaks of it as only a possible cause. We quote him as follows:

"Q. Could he have received such an injury as he states that he did receive in his testimony, which could have caused the cataract that he is suffering from?

"A. I think so.

"Q. Now, could that injury have been received in August, 1925, and have only caused complete loss of sight in this eye in December, 1928?

"A. I think that is possible, all right; from the history, I would say it was probable.

"Q. From the history?

"A. Yes, sir. Sometimes they develop very slowly. The average time of maturing cataract is from one to three years, but I have known some of them much longer than that."

In a later part of his testimony he says:

"Q. Well doctor, do you thing it probable that a man just receiving a slight wound that never stopped him from work, a piece of steel no larger than a pin head, if it was going to cause a cataract he would not feel it in less than three years?

"A. I have seen cases like that. I have seen cases like his that develop very slowly, just come on with a little bit of trouble and afterwards find there was a cataract developed.

"Q. Is there a continuous inflammation then?

"A. There might at times be a little bit, and sometimes it might not bother him at all to amount to anything.

"Q. Then it could not develop into cataract?

"A. Yes, it could.

"Q. You think it could?

"A. Yes, it could.

"Q. Well doctor, do you think it is probable or only possible that it would develop?

"A. Well, I would say that it is possible.

"Q. But not probable?

"A. No, because in many of these cases they get all right.

"Q. Now doctor, isn't it a fact that a traumatic cataract usually develops a soreness and an infection within a very short time after the traumatism?

"A. Most of them do."

Dr. Lapat says there was nothing in plaintiff's eye at the time he examined it, consequently Dr. Foreman must have gotten out of the eye all that got into it in the way stated.

The Employers' Liability Act, No. 20 of 1914, sec. 18, subd. 4 (amended by Act No. 85 of 1926) says:

"* * * All findings of the fact must be based upon competent evidence, and all compensation payments provided for in this act, shall mean and be defined to be for injuries and only such injuries as are proven by competent evidence, of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself."

Section 38 (amended by Act No. 38 of 1918) provides as follows:

" * * * The terms 'Injury' and 'Personal Injuries' shall include only injuries by violence to the physical structure of the body and such diseases, or infections as naturally result therefrom.

"The said terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted."

According to the preponderance of most plausible and persuasive evidence, it is not shown with reasonable certainty that the cataract which formed on plaintiff's eye grew out of or was activated into existence as a result of injury to plaintiff's eye caused by the particle of steel which struck him in August, 1925. Such was the conclusion of the district judge. In giving his reasons for judgment, he speaks of the cataract as being only a possible result of the injury mentioned.

We agree with the lower court that the facts and circumstances are not sufficiently strong to justify holding that the cataract which has caused the loss of plaintiff's eye grew out of or was influenced into activity as the result of injury to plaintiff's eye, due to having been struck in the eye by a small piece of steel on August 9, 1925.

The judgment appealed from is in our opinion correct. The defendant and the appellee have answered the appeal for the purpose of having this court fix a fee in favor of Dr. Iles, which, it is alleged in the answer, the lower court omitted to do.

The judgment appealed from condemns the plaintiff to pay the cost. The judge a quo has power upon the return of the case to fix and tax the fee. It is not a matter upon which we should act, in the way brought before us.

Judgment affirmed. Appellant to pay the cost in both courts.