WOMACK v. HIGHWAY CONST. CO., INC.

———

(October 19, 1931.  Opinion and Decree.)
(November 30, 1931.  Rehearing Refused.)

———

Dufour Bayle, of New Orleans, attorney for plaintiff, appellee.

Henry & Cooper, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J.  Plaintiff claims compensation for temporary total disability and medical expenses under the workmen's compensation statute (Act No. 20 of 1914, sec. 8, as amended by Act No. 242 of 1928), alleging that he was employed at a salary of $175 per month by the defendant to operate a drag-line excavating machine used by it at Bayou Goula, La., in the construction of a levee; that on May 12, 1930, about 3 o'clock in the afternoon, the gears of the machine broke; that while making the necessary repairs and lifting the heavy gears and the gear shield into position, he "strained his back," causing a "traumatic sacroiliac sacro lumbar strain of the left side of his back"; that his injuries were of such a nature as to necessitate medical attention and his confinement in a hospital, where he was

kept in a Buckholz's position with weights attached to his left leg for three weeks or more, and thereafter he was placed in plaster of paris jackets, one of which he is still wearing.

The defendant admits the employment and salary of plaintiff, but denies that he sustained an accident or accidental injury while working for it, and, if so, that the accident in no way caused the sacroiliac sacro lumbar strain.

There was judgment in favor of the plaintiff, as prayed for, and defendant has appealed, contending that the judgment is erroneous because plaintiff failed to prove by a preponderance of the evidence that he sustained an accident while engaged in its services and that the injury of the plaintiff resulted from the alleged accident.

The record shows that the defendant company was engaged in the business of constructing levees under contract with the United States Government and was using a large machine called a drag-line excavator for the purpose of excavating and conveying earth, out of which the levee was built. The plaintiff was employed by the defendant on September 20, 1929, as an operator, his duties consisting of running the machine and making any necessary repairs. He was a young man of 23 years of age, 5 feet 10 inches tall, and weighed 175 pounds; he worked regularly and was in good health aside from suffering from constipation, diseased tonsils, and rheumatism in his left knee. On or about May 12, 1930, the gears of the excavator got out of order and the plaintiff, with a crew of three or four workmen, undertook to repair them. While so engaged and assisting the other men in lifting the gear and gear shield, plaintiff suffered a strain of his back. That afternoon he complained to one of the men, who was temporarily in charge during the absence of the superintendent, that he had strained his back while repairing the gears and was having pain in his left hip. He continued to work the balance of the afternoon operating the machine, which appears to have been less laborious than the work of repairing the gears. While going to the camp where the employees of the defendant obtained board and lodging, he again complained of pain in his back to two other workmen, who noticed that he walked in a stooped position. The next day he performed his usual work and the witnesses for both the plaintiff and defendant noticed that he walked with a marked list and complained of rheumatic pains in his back and left hip. The pain became so severe that two or three days after the alleged accident, either on the levee or at the camp, he told one of the owners of the defendant company that he was suffering from rheumatism in his back and hip and asked him to suggest a good doctor.

The next day the plaintiff consulted Dr. Phillips, who had been recommended to him, telling him he had been suffering from rheumatic pains in his back and left hip, but neglected to say anything about straining his back. After a thorough examination the doctor found that the plaintiff was suffering from constipation, infected tonsils and that his left leg was longer than his right leg. He prescribed a sedative to ease the pain, a built up shoe for his right leg to compensate for the deficiency in length, and recommended the removal of his tonsils. The plaintiff carried out the instructions of the doctor

and had his tonsils removed by another surgeon, Dr. Edison, at Baton Rouge. He then went to his home at Denham Springs, where Dr. Williams treated him, recommending hot baths, which he took regularly, but he failed to obtain relief, his condition becoming more aggravated.

The plaintiff had an accident and health insurance policy and made an application for sick benefit, as he was suffering from rheumatism caused by his tonsils, but did not make any claim for accidental injury. The proof of claim was signed by the plaintiff and Dr. Williams, who diagnosed plaintiff's ailment as "soreness of left sciatic nerve." In the physician's certificate, also filed in connection with the claim, Dr. Phillips states that plaintiff was suffering from "tonsilitis, arthritis and lumbago." In neither doctor's certificate is anything said about accidental injury.

Plaintiff's condition failing to improve, he consulted another doctor, who recommended Dr. Hatch, a specialist in bone and joint surgery. Plaintiff informed this doctor of the nature of his work and the history of his ailment, and, based upon this history and also his own examination of the plaintiff, Dr. Hatch diagnosed the case as "a traumatic sacroiliac sacro lumbar strain of the left side of his back." The doctor put the plaintiff to bed in a hospital in what is called a Buckholz's position, i. e., one of complete rest on a hard bed, with his left leg put up in extension, viz., with a weight attached thereto so as to relieve the muscle strain and allow the parts to get into a normal position. When this condition obtained, which is determined by a lack of further spasms of the muscles and the ability to raise the leg without pain, the patient was placed in a plaster of paris jacket, which was changed on January 7, 1931, and a new one applied. His condition improved until he was able to walk on crutches, but at the time of the trial on January 26, 1931, he was still wearing the cast and was unable to return to his employment.

The law is clear that it is incumbent upon the plaintiff, in a suit under the workmen's compensation act (Act No. 20 of 1914, as amended), to prove by a preponderance of the evidence, that is, with legal certainty, the fact that an accidental injury was sustained and causal connection between the injury and the disability complained of. Piske v. Brooklyn Cooperage Co., 143 La. 455, 78 So. 734; Cordray v. Standard Oil Co. of La., 9 La. App. 458, 121 So. 220; Elix v. Glassell-Wilson Co., Inc., 9 La. App. 209, 119 So. 147; Youngblood v. Colfax Motor Co., 12 La. App. 416, 125 So. 883; Purvis v. Ware Construction Co., 5 La. App. 684; Dennis v. Fortuna Oil Co., 5 La. App. 709; Bailey v. Gulf Refining Co., 17 La. App. 43, 135 So. 265.

The defendant's first complaint is that the petition alleges that the injury took place on May 12, 1930, at 3 o'clock p. m., and that the plaintiff and his witnesses testified that the excavating machine broke down on that date, but that the overwhelming evidence is that the break-down took place on May 10th. We believe, as our learned brother below, that this is an unimportant detail and would be relevant only if it affected the credibility of the plaintiff and his witnesses.

Defendant next contends vigorously that the only direct evidence of the accident or injury is the plaintiff's testimony, for no one else testified to seeing him injured.

It is true that no one saw the plaintiff injured, but the peculiar nature of the injury, that is, the sacroiliac sacro-lumbar strain, makes it impossible for anyone to have "seen" such an accident. We must, therefore, look to the credibility of the plaintiff and the corroborating circumstances of the alleged accidental injury and the medical testimony.

We are favorably impressed with the fact that the plaintiff did not immediately quit work, but while subject to considerable pain, continued the performance of his duties for three or four days. It was only after the pain became unbearable that he sought the advice of his employer for the purpose of securing a competent doctor to consult about his case. Believing that he was suffering from rheumatism, a natural sickness, he did not make any claim for disability caused by accidental means, but for disability from sickness. The plaintiff and the doctors who treated him before the time he placed himself under the care of Dr. Hatch believed that he was suffering from neuritis, or rheumatism. The judge, a quo, in his written reasons for judgment, said:

"I think there is no doubt that Mr. Womack had no thought until after he was treated by Doctor Hatch, and received Doctor Hatch's opinion upon his case, that he had received any such injury while in the employ of the defendant as to entitle him to compensation, and he made no claim for compensation until after he had received treatment from Doctor Hatch. Until that time it is quite clear that he thought his condition was due to rheumatism, of which he had had an attack or some manifestation two or three years before. However, I think those circumstances rather support the plaintiff's case. They corroborate the opinion I had of him as he testified, that he is an honest man, who withheld his claims until he had

some assurance that he had the right to make them. They confirm the view that he is not a mere malingerer, who, on slight excuse, runs to his employer for compensation. He thought he was suffering from rheumatism. It was not until Doctor Hatch told him different that he thought differently."

The witnesses for both sides testified that the plaintiff complained of pain in his hip and back and that he walked in a stooped position from the day the gears were repaired until the time he left the camp to consult Dr. Phillips three or four days later. Dr. Hatch testified most positively that the plaintiff was suffering from a traumatic left sacroiliac sacro lumbar strain. To offset this, the learned counsel for defendant calls our attention to the fact that Mr. Villere, a part owner of the company, and several employees on the job and Dr. Phillips, testified that the plaintiff, at the time he spoke to them, did not say that he strained his back handling the gears, but that he was suffering from rheumatism and further that plaintiff's proof of loss was for disability growing out of sickness and not disability resulting from accident. We believe that the explanation of the plaintiff's conduct in stating that he was suffering from rheumatism was due to the fact that he had had rheumatism in his left knee and believed that he had a repetition of his old malady. We cannot condemn him for having misjudged the cause of his pain, because even the doctors diagnosed his case as sciatic neuritis and lumbago and so wrote it in the physician's certificates in connection with the claim under plaintiff's policy.

We are of the opinion that the evidence amply sustains the finding of the trial court that the plaintiff sustained an accidental injury.

On the issue as to whether there was causal connection between the injury and the disability, Dr. Edward S. Hatch, medical expert for the plaintiff, testified that he first saw the patient on September 13, 1930, and noted that the patient exhibited a very marked list to the right while standing or sitting, that the normal lumbar lardosis, or natural curve of his back, was lost; that the raising and extending of the left leg was very painful; that his teeth were in good condition; that his tonsils had been removed; that all motions of the hips, knees and ankles were normal; that from his examination and the history of the case furnished by the plaintiff, he was firmly of the opinion there was no question but that the sacroiliac sacro lumbar strain was caused by trauma. On cross-examination he further testified that any sudden, severe twisting or wrenching of the back would cause such an injury.

Dr. Phillips, medical expert for the defendant, testified that he saw the patient only on May 16th and obtained from him a history of the case; that plaintiff did not tell him about suffering a strain by lifting any heavy object; that the patient said he had come to him because of a pain in his left hip; that he had suffered from rheumatism in his left leg for two years; that an examination revealed that plaintiff was affected with diseased tonsils and constipation and that his left leg was longer than his right; and that he was of the opinion a sacroiliac strain could come from a congenital shortening of the leg.

As we view the situation, the testimony of these two experts do not necessarily conflict, because Dr. Phillips simply states that in his opinion a congenital shortening of the leg could cause a sacroiliac strain, whereas Dr. Hatch positively states that plaintiff's injury was of traumatic origin. However, if it be said that there is a conflict in their testimony, then due to the fact that Dr. Hatch treated the patient for several months and had a better opportunity to observe the case than Dr. Phillips, who only treated the patient once, we believe that Dr. Hatch's testimony would be entitled to greater weight.

Counsel for defendant strenuously argues that in the interim between the time of the alleged injury and the time that Dr. Hatch saw plaintiff on September 13, 1930, plaintiff could have sustained this injury by some other means and that, on this point, we again have to accept his testimony, which is insufficient. Our answer to this argument is that the plaintiff was a young man in apparent good health, worked regularly and, from the time of the injury complained of, suffered pain and walked in a stooped position, requiring him to consult a physician, and that he was thereafter constantly under medical care. We, therefore, do not have to depend upon the unsupported testimony of the plaintiff, but have strong corroborative circumstances to support it. We agree with the trial court that the evidence establishes causal connection between the accident and the disability from which the plaintiff was suffering.

There is no question as to the correctness of the amount of compensation and medical expenses allowed.

For the reasons assigned the judgment is affirmed.