No. 936

First Circuit

HUVAL v. SEXTON CORP.

(February 9, 1932. Opinion and Decree.)

Burke & Smith, of New Iberia, attorneys for plaintiff, appellee.

Porteous R. Burke, of New Iberia, attorney for defendant, appellant.

MOUTON, J. On the first trial of this case, a compensation suit, the court rendered judgment against defendant for partial disability and on the second, granted on a motion for a rehearing, plaintiff was allowed compensation for total disability which is claimed in his petition.

Plaintiff, at the time he was hurt, was employed in laying gas pipe lines for defendant company.

He says he had gotten down in a ditch where the pipes were being laid and when injured, was standing in water which covered his boots. He testifies that he was digging in the ditch with a shovel, that as he tried to get out of the mud, he pulled his shovel at the same time, thus causing a hernia. He says "the boss near told the time-keeper to make a report that I had been hurt and send me to the hospital,"

where the record shows he was sent. It is not contradicted that he was sent to the hospital by his "boss." His further statement is that he had to pull his legs out with his hands, and that he felt a pain "in his side—it was burning," he says.

Dr. Dauterive, testifying for plaintiff, said that a hernia was always the result of sudden effort or strain. He examined plaintiff on February 4, 1931, the day of the accident, and found that plaintiff was suffering with incipient hernia on the left side. After stating that a hernia was always caused by a sudden strain or effort, Dr. Dauterive said there was a possibility but not a probability that this incipient hernia could have resulted instantly.

Counsel for defendant, with the evident purpose of showing that plaintiff was suffering with hernia prior to the alleged accident asked Dr. Dauterive if it was not his conclusion that plaintiff had been previously so affected. His answer to that was: "I cannot say. Possibly he was." Further, he said a very small proportion are probably affected as plaintiff was.

Plaintiff can neither read nor write, is very ignorant, as the testimony reveals, and says he did not know anything about the rights of an employee to recover compensation in such cases against his employer, and we have no hesitancy in believing that this statement on his part is true. His ignorance, in that respect, affords little reason to believe that he had premeditated an action in damages on the pretense that he had been injured as claimed by him.

The work in which he was engaged and the strain to which he was subjected, as described by him in his simple narration of the occasion, lend the color of truth to the cause he gives for the hernia.

The fact also appears that he immediately stated to his "boss" that he had been injured, upon which he was sent to the hospital for treatment, and was found by Dr. Dauterive to be suffering with a case of incipient hernia. This physician also said that when hernia is caused from sudden strain "it is usually accompanied by sharp pains." In describing the way the accident occurred, plaintiff said that he felt a pain in his side and that "it was burning." This statement is in keeping with the statement of Dr. Dauterive that when a sudden hernia occurs it is usually accompanied by "sharp pains." This burning sensation which plaintiff says he suffered with immediately after the occurrence characterizes his trouble as a hernia. It is not believable that plaintiff knew that such hernias were followed with burning sensations or sharp pains, and could have feigned such a condition to fabricate a claim for compensation when he did not know he had a right to ask that from his employer.

Counsel for defendant, on this feature of the case wherein he contends that the proof is not sufficient to establish the alleged injury, refers us to the compensation statute where it says that proof of injuries must be shown by competent evidence "of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee." Act No. 85 of 1926, p. 120, sec. 18, subd. 4.

In referring to his examination of plaintiff, Dr. Dauterive said: "I had to accept his statement on his mannerisms and also finding the opening larger than normal that helped me to conclude." There the doctor says he found the "opening larger than normal." This part of the physician's

testimony shows that there were present "objective conditions or symptoms" to which the above quotation of the statute refers.

Dr. Sanders, called by defendant company as an expert on the second trial, in speaking of his examination of the plaintiff says, "I found that his left engino canal was enlarged sufficient to allow the introduction by the usual method from the end of my small finger." Further, he says that "the ring of the external canal was large enough to allow a small recurrent hernia."

Here, again, according to the statement of Dr. Sanders, there appeared "objective conditions or symptoms" which were certainly "not within the physical or mental control of the injured employee," spoken of in the compensation law.

In support of his contention that plaintiff has not established his alleged ailment by competent evidence, as required under the provisions of the above excerpt of the statute, counsel for defendant refers us to the case of Rutly v. Honor & Co., 7 La. App. 164.

In the course of the opinion, the court in the body of the opinion said that plaintiff had not made it "reasonably certain that the infirmity of his eye is due to the accident, or to creosote in his eye, but in the language of the trial judge in his reasons for judgment, 'that the vast preponderance of evidence in this case negatives the fact that the condition of plaintiff's eye is a result of the accident.'"

In another case, Elix v. Glassell-Wilson Co., 9 La. App. 209, 119 So. 147, the court reached a similar conclusion where the testimony of skilled physicians showed that the employee was suffering from a chronic disease different from the trouble of which he was complaining.

Obviously, under the decisions above referred to a situation essentially different from the one here was presented, as we have not in the instant case the positive practically unanimous opinion of physicians negativing the idea that plaintiff was not suffering with a hernia, incipient or recurrent. We find that plaintiff has shown that he suffered the injury complained of and that we cannot say that the court has fallen into an error in so holding.

This brings us to the consideration of the question as to whether the injury caused total disability at the time of the trial, incapacitating plaintiff from doing work of any reasonable character, as was held by the district judge.

The record shows plaintiff was wearing a truss when he was examined by Dr. Sanders, and which he had been advised to wear by Dr. Dauterive.

Dr. Sanders said that the wearing of a truss was a makeshift, and believed in operations, which he said were now-a-days successful, and entailed no danger. In referring to recurrent hernias, this doctor explained that they brought about different results. In illustration of that statement, he said he saw a negro working in the field when so affected, and saw men miserable with a small one in the engino canal. Further, he says on this subject as follows: "Considerable pain is manifested at each pain. There is a small muscle that comes down and causes intense pain." Asked if his expert testimony did not show that plaintiff was not suffering with a partial, but with total, disability, Dr. Sanders answered: "No, only when it descends. And he can work fairly well until then." It

is not amiss to remark here that in all probabilities plaintiff's hernia might take an occasional downward course, and descend, and at such times there would result total disability, if we correctly construe the testimony of Dr. Sanders.

Dr. Sanders was again interrogated as follows: "What is the danger of a recurrent hernia?"

A. "Well not much. It is liable to open at any time. Just coughing or sneezing can bring it. Sometimes just walking on the street. Most, if not totally, disabled. And especially the amount this man had, which would allow the passage of my little finger. But the remedy for it is absolute."

It occurs to us, if mere coughing, sneezing or walking in the streets could bring about such dire results, particularly in a case like this where there would be passage of the little finger, there existed total disability in the plaintiff or a condition so near to it that it would be almost impossible to say that plaintiff was not suffering as was averred in his petition.

Plaintiff testified he was physically sound before the accident, and never suffered with hernia at any time prior thereto.

Counsel for defendant company, in opposition to that statement of the plaintiff, refers to the fact that though plaintiff was offered a truss by defendant company, he did not accept this tender of assistance, and claims that he subsequently borrowed a truss from a friend and wore it. Such circumstances as these are offered by counsel as contradicting the testimony of plaintiff that he had never previous to the accident been afflicted with a hernia, and had never worn a truss before. The circumstances so pointed out by counsel, at the utmost, give rise to mere suspicion which are dissipated and disappear in the light of the evidence, showing the way the accident occurred, its immediate report, the examination of physicians soon thereafter, the stinging, burning sensations or pains which followed the strain, and other facts to which we have hereinabove referred.

It must therefore be accepted as proved that plaintiff had not, previous to the accident, been afflicted with any such trouble. Since the occurrence, plaintiff says he suffered pains almost continuously and for relief saw Drs. Dauterive, Landry, Sabatier, Sanders and Comeaux, his family physician at Youngsville in Lafayette parish, his domicile. It is hardly believable that he would have seen all these physicians to carry out a concocted scheme to fleece defendant company in damages. This is possible but not probable.

It appears, as we have before stated, that plaintiff is illiterate, and is fit only to common manual labor. The fact is that prior to his employment by defendant company he was working for a pipe line company in the state of Texas. He was accustomed to work of that character, plowing and hoeing, and to general field manual labor required by the occupation of the ordinary farmer.

It is shown that after the accident he tried to work in the field, that he could not stand it because of aches he suffered in his side. As he could not do field work it certainly appears that he could not have gone back to spading in trenches for the laying of pipe lines, his accustomed work. Plaintiff tried at various times to get work at butcher shops, filling stations, garages, etc., with the idea of obtaining some light work that he could perform, but without success. He thereafter moved to Abbeville,

where his wife tried to get washing to support their family.

Plaintiff says he would drive a truck or an auto, as chauffeur, were he able to get that kind of employment, which he had no prospects of finding, as appears from the record.

Counsel for defendant company says, on this branch of the case, that the district judge seemed to have interpreted the compensation statute as meaning that the incapacity of plaintiff is to be determined solely by the character of labor he had performed in the past; and the fact that he "can perform other manual labor does not enter into the equation."

Counsel refers us to no decision, and we are not aware of any, maintaining his position in that respect. The opinions rendered on the subject by the various courts rather incline to the view that the incapacity refers to the line of work to which the employee is accustomed, although not expressly so stating in their rulings on the subject.

Here, we have the case of an employee not able any longer to lay pipes, to which he was accustomed, and totally unable to do field work on a farm or manual labor of the character required in farming operations, and for which he is qualified to work above any employment which might be tendered him. The proof is that he has sought in vain for some light work that he could do, and failed to get any, and expressed his willingness to take the position of a truck or auto driver, which he had no prospect of having, and that finally he was driven to Abbeville, where his wife expected to get work as a washerwoman from which she might eke sustenance for her husband, herself and children.

Another contention of counsel urged against plaintiff's claim is that the doctors had advised him that his ailment was not serious, and that an operation would effect an absolute cure, and that he refused to submit to an operation.

Plaintiff's counsel recognizes the rule which says that the employee is not forced to submit to an operation to entitle him to compensation, except when his refusal is entirely unreasonable, citing the case of Bronson v. Harris Ice Cream Co., 150 La. 455, 90 So. 759, 760, in support of that contention.

In the course of the opinion, in that case, the court after referring to an operation which might be altogether simple and unattended by risks, continuing, said: "That plainly the real cause of the disability would be not so much the injury as the not making use of the easy remedy at hand."

In this case, for the reasons we have heretofore given, it would be doing violence to the evidence to say that the real cause of the disability consisted in "not making use of the easy remedy at hand," as is stated in that decision. We make this remark because the real cause of the injury is established by the record, and could not consist only in the refusal by plaintiff of the remedy proffered.

According to the testimony of Dr. Sanders, in the case of a recurrent hernia with which plaintiff was suffering, he said sometimes caused "intense pain." No doubt plaintiff suffered with considerable pain which evidently led him to several physicians in his endeavors to get relief. This is evidenced also by the fact that he was unable to do field work on account of these

pains. Plaintiff said he was afraid of an operation. The sufferings he experienced, his inability to work, must have impressed him with the seriousness of his ailment, and his refusal to submit to an operation under such circumstances should not, we think, operate as a forfeiture of his right to recover. It seems to us, such an impediment to recovery not being in the statute, as was pointed out in 150 La. 455, 90 So. 759, case above cited, that an interpretation carrying such a rule of forfeiture in the compensation law would not be in line with the uniform liberal construction which has been given by our courts to the Employers' Liability Act in favor of the employee. In the requirement of the proof demanded to show the injury for which compensation is claimed, we have invariably held that the doctrine of liberal interpretation was out of place, but here, we think, this liberal construction should apply to the extent, as above indicated.

The lower court, in its final opinion on the rehearing, found that plaintiff suffered a permanent total disability at the time of the trial, and rendered judgment for plaintiff during the period of his disability, following the decisions in the cases of Thomas Hutchinson v. Louisiana Central Lumber Co., 3 La. App. 413; Laurence Connell v. Gilliland Oil Co., 2 La. App. 435.

The judgment is correct with the exception that it fails to give plaintiff legal interest upon all the unpaid installments of compensation allowed under the decree, which is demanded here in answer to the appeal.

It is therefore ordered, adjudged, and decreed that plaintiff have judgment against defendant for legal interest on these unpaid installments; and, as thus amended, the judgment be affirmed.