## CRIPPS v. GRANT TIMBER & MFG. CO. OF LOUISIANA, Inc.
### No. 4803.

Court of Appeal of Louisiana. Second Circuit.

June 4, 1934.

Julius T. Long, of Shreveport, for appellant.

White, Holloman & White, of Alexandria, for appellee.

MILLS, Judge.

Under the provisions of the Workmen's Compensation Act (Act No. 20 of 1914, as amended), plaintiff is claiming 400 weeks' compensation at the rate of $4.68 per week because of disability resulting from a left inguinal hernia alleged to have been accidentally received in the course of his employment while feeding slabs to a machine in defendant's lathe mill. In his testimony he thus describes the occurrence: "I was feeding the bolting machine, putting the slab in the machine and the far edge of the bed was a quarter of an inch lower than the bed under the feed-chain, and in lifting, the chain caught on the slab and gave me a quick jerk and a hard jerk and the pain hit me on my side here and I lay over on the stock chain. Gilles Boen saw me, and asked me what was the matter."

The record discloses that he did not stop work at the time, made no outcry, or otherwise called to the attention of his fellow workmen any unusual happening.

Dick Duff, who was about six feet away facing plaintiff, catching the stock fed into the machine by plaintiff, and James A. Boen, also facing plaintiff at his work about twelve feet away, both say they saw no such occurrence. Nor does plaintiff produce any witness who did.

Two witnesses, one for plaintiff and one for defendant, do say that during a lull when the work was shut down plaintiff told them that a slab had hit him and exhibited an old appendicitis operation scar on the right side of his abdomen. H. G. Boen, the sawmill foreman, says that he received no report of the accident, but that a week later plaintiff claimed that a slab had hit him and showed the old scar. The lathe mill foreman testifies that plaintiff worked the day out without complaining of any accident.

On August 9th, the day after the alleged occurrence, plaintiff reported to the company physician, Dr. I. N. Adams, complaining that on August 5th, while feeding a machine, he got a sudden pain in his right side which he feared was ruptured. Dr. Adams, testifying from his records, says that an examination disclosed some tenderness and distention over the abdomen, with an accumulation of gas, of which plaintiff had complained for the past six years. A thorough search for hernia disclosed none. Most of the plain was in the upper right part of the abdomen and in the upper edge of the old scar. To support the abdomen and relieve the strain from any possible adhesions, he strapped it up with adhesive tape.

September 7th plaintiff again appeared before the doctor, suffering from a bad cold and cough. On this occasion Dr. Adams discovered a slight swelling of the internal ring on the left side, indicating the beginning of an inguinal hernia. The patient was discharged on September 22d as able to work and did work all that fall and until June, 1933, cutting, loading, hauling, and stacking pulpwood. His employer says that, though this work called for hard manual labor, plaintiff performed it without complaint and was paid wages equal to those received in the lathe factory. At the time of trial he was working for the E. R. A. for $1.80 per day.

So many hernia cases are reported that a lengthy discussion of this affliction would be a mere repetition. It is sufficient to say that it results from a congenital weakness, and may be brought on by a most trivial happening such as a cough or relaxed posture. When developed by trauma, severe pain is usually felt. In Mustack v. Union Indemnity Co. (La. App.) 147 So. 749, 752, the court said: "It seems to us that, if plaintiff had suddenly sustained a hernia while assisting a number of other men lift something, the resulting pain and unusual feeling would have caused him involuntarily, immediately, then and there, to say to those present that something had happened to him while lifting. Then again, at

least ordinarily, according to the medical testimony on the subject, plaintiff would have been in no condition to continue working, and there would have been symptoms due to the shock, such as weakness, pallor of countenance, nausea, etc. None of the witnesses spoke of any symptoms of this kind; and we are satisfied that nothing of the kind occurred at the place where plaintiff was at work."

The cases relied upon by plaintiff, Musgrove v. Louisiana Highway Comm. (La. App.) 149 So. 899, Miller v. Frank Grocery Co., 17 La. App. 333, 136 So. 143, and Huval v. Sexton Corporation, 19 La. App. 198, 139 So. 739, all presented a question of fact, were decided in favor of the plaintiff by the lower court, and affirmed on appeal.

The present case also involves an issue of fact, but one that was decided below adversely to the plaintiff. Considering the paucity of proof and the contradictions in the testimony of plaintiff and his witnesses, we are not prepared to say that the lower court, which saw and heard the witnesses, manifestly erred in rejecting plaintiff's demand.

The judgment appealed from is accordingly affirmed.