The original petition of Roosevelt Brown was filed on June 19, 1941. He alleged that on March 26, 1941, in the course of his employment by R.P. Farnsworth Company, Inc., and in an accident growing out of that employment, he sustained injuries which caused temporary total disability for a period of twenty weeks and that he was paid compensation for one week, and he prayed for solidary judgment against that corporation and its insurance carrier, Ætna Casualty Surety Company for nineteen weeks at 65% of $22 per week, subject to a credit of $14.30, representing the payment for one week, which he had received.
On June 26, 1941, respondents answered this petition, admitting the employment and the rate of pay and that an accident had occurred on March 26, 1941, and that plaintiff had sustained injuries for which compensation was due, but denying that the injuries were serious, and averring that on April 14, 1941, plaintiff was discharged by the physician; had completely recovered and was able to return to work. Defendants admit that compensation for one week was paid.
On December 9, 1942, in a supplemental and amended petition, plaintiff alleged that he had discovered that his disability, instead of being temporary, as set out in his original petition, would be permanent and total, and he prayed for an award of $14.30 per week for four hundred weeks subject to a credit for the amount already paid.
To this supplemental and amended petition, respondent filed exceptions of no cause of action and no right of action, and also a plea of prescription of one year based on Section 31 of Act No. 20 of 1914, as amended by Act No. 85 of 1926, and by Act No. 29 of 1934.
These exceptions and the plea of prescription were overruled. There was a judgment for plaintiff for $14.30 for nineteen weeks subject to a credit for one week. From this judgment both defendants have appealed suspensively and plaintiff has appealed devolutively.
The accident occurred on March 26th, but the immediate effect was so slight that plaintiff continued to work not only during the remainder of that day but also for the following two days. On March 31st, complaining that he was unable to work because of serious injuries to the right side of his chest, he was sent to Dr. Mahorner who, when asked concerning the injury complained of, said:
"It could not be severe for several reasons and one was that the objective evidence did not indicate a severe injury and further, the man worked several days before he reported to me. (Tr. p. 19.)"
It is true that at that time there appeared to be a possibility that Brown might have sustained a fractured rib, but in order to arrive at a more certain diagnosis, Dr. Mahorner required that X-ray photographs be made of that portion of his body about which he complained. Dr. Samuel, a radiologist, made the required photographs and testified that they showed no fracture. Dr. Mahorner then concluded that there was no fracture, that the injuries were very slight and he discharged Brown on April 14th as able to return to work. Brown, however, continued to complain, and did not go back to work, and on April 17, 1941, he was sent to Dr. Battalora, an orthopedic specialist, who made a thorough examination and reached the conclusion that he had sustained no such fracture. Dr. Battalora examined him again on June 25, 1941, and finally on March 2, 1943. He found nothing which led him to believe that plaintiff was suffering or was disabled as a result of the accident complained of. He said:
"It is my opinion he did not have the pains which he indicated. He said he had pain over the second rib when anything touched him and when I touched him with deep pressure he had no pain."
Later, when asked if he could give any reason for Brown's continuing to claim that he could not sleep at night and that he suffered pains, said: "In my opinion he has no pains."
Obviously, Dr. Battalora was of the opinion that the plaintiff was malingering.
Several times between the occurrence of the accident and the trial, plaintiff changed counsel, and at the suggestion of one of his attorneys he consulted Dr. M.H. Kaplan, and, at the suggestion of another attorney, he was examined by Dr. Henry Leidenheimer, Sr., and Dr. J.O. Weilbaecher, Jr. *Page 50 
In his petition he alleges that X-ray photographs were made by Dr. Leidenheimer, yet he produced as witnesses none of these doctors and did not produce the X-ray photographs taken by Dr. Leidenheimer.
Additional X-ray photographs were taken at the Charity Hospital in New Orleans and these photographs, like those taken by Dr. Samuel, showed no fracture.
During the course of the trial, counsel for defendants suggested that he would like to have the court select a radiologist and have X-ray photographs taken at that time, and, acting on this suggestion, the trial judge appointed Dr. Lucien A. Fortier. Dr. Fortier took additional photographs on Saturday, June 19, 1943, and he found from them that at sometime in the past Brown had sustained a fracture of the first rib at the junction with the sternum on the right side. He said that in his opinion the photographs showed an old fracture; that it was "what I call a healed fracture", and he said that it should cause no disability and that Brown had completely recovered, and was perfectly well. When asked what he meant by an old fracture, he said that it might still be an "old fracture" and yet have taken place since the occurrence of the accident of which Brown complains. At any rate, he was of the positive opinion that it had no disabling effect whatever at the time of the trial, and yet Brown at that time continued to complain that he suffered greatly and that he could not possibly go to work.
Brown's personal physician, a member of his own race, Dr. Raleigh J. Coker, stated that he was suffering from several fractures and also from a separation of "both the sterno-clavicular junctions." The other doctors who examined Brown stated that there was no such separation evident at all, and other X-ray experts who examined the photographs taken by Dr. Coker stated that there was nothing in those photographs which indicated any such separation.
Dr. Coker is the only physician who found that Brown had a fracture attributable positively to the accident in question. This doctor said that his X-ray pictures taken on October 28, 1942, showed not only a separation of both the sterno-clavicular junctions, but also showed that three ribs had been fractured. On the witness stand when he was asked to identify these fractures from the photographs which he had taken, he found still another fracture, and then said that Brown suffered from four fractures. The other X-ray specialists who examined Dr. Coker's photographs said that they found no evidence of the fractures which he said he could see in these pictures.
Dr. Boni J. DeLaureal, a specialist in internal medicine, examined Brown on March 13, 1943, and found him absolutely normal, and Dr. Edmund Connely, a neurologist, also examined him in March, 1943, and found nothing wrong with him so far as his specialty was concerned.
The record overwhelmingly shows that at the time of the trial, there was nothing whatever the matter with Brown, and that he could have gone back to work at any time had he been willing to do so. It further shows that although in the past he had at some time sustained a fracture of one of his ribs, there is no possibility of saying, with any degree of certainty, that that fracture had been sustained in the accident of March 26, 1941. In fact we think that the record makes it very clear that on April 14, 1941, when he was discharged by Dr. Mahorner, he could easily have returned to work had he been willing to do so.
There is, of course, the bare possibility that all of the doctors to whom we have referred were wrong and that at that time one of the plaintiff's ribs was fractured, but this is a bare possibility and the overwhelming preponderance of the evidence leads us to the conclusion that at that time there was no such fracture. We bear in mind that in compensation cases as in other suits, the plaintiff must make his case legally certain. He cannot rest it upon possibilities. In Piske v. Brooklyn Cooperage Co., 143 La. 455, 78 So. 734, the Supreme Court said:
"* * * While the Employers' Liability Act, § 18, par. 4, holds that the judge, in the trial of suits under that act, is not bound by the usual common-law or statutory rules of evidence, it is nevertheless incumbent upon a claimant to prove the facts necessary to sustain his demand, and we cannot conceive of any good reason to hold otherwise. * * *"
In Haddad v. Commercial Motor Truck Co., 150 La. 327, 90 So. 666, 673, appears the following:
"* * * A case must be made out to a legal certainty; this is elementary, and is as true in the case of a suit under the *Page 51 
Workmen's Compensation Act, like the present, as in any other. * * *"
See also Johnson v. Barber Bros. Contracting Co. et al., La.App., 4 So.2d 14; Johnson v. John J. Kilcoyne, Inc., La.App., 180 So. 159; Agee v. Brown Paper Mill Co., La.App., 190 So. 148; Davilla v. Fruit Dispatch Co., 10 La.App. 47, 121 So. 191; Elix v. Glassel-Wilson Co., Inc., 9 La.App. 209, 119 So. 147; Rutley v. Honor Co., 7 La.App. 164; Reynolds v. Hotel Youree Co., 6 La.App. 790.
As we have already stated, not only does the record fail to show with reasonable certainty that there was any fracture traceable to the accident, but we think it shows conclusively that there was none.
It is unnecessary that we discuss the plea of prescription directed at the amended petition, since we find that plaintiff is not entitled to any recovery even under the original petition.
The judgment appealed from is annulled, avoided and reversed, and plaintiff's suit is dismissed at his cost.
Reversed.