At about 7:15 o'clock on the morning of February 8, 1946, the plaintiff, Clifford C. Cook, was employed by the M. J. Walsh Boiler Scaling Company, Inc. At that time Cook was totally blind in his left eye. The business in which the said corporation was engaged and the work which Cook was employed to perform were admittedly within the contemplation of the Louisiana Workmen's Compensation Law, — Act No. 20 of 1914, as amended. At about 8:00 o'clock Cook went to work loading ship stores on a wharf alongside the Mississippi River. In his petition he alleges that a little later on that morning his right eye was struck by the corner of a piece of beaver board and that as a result of that accident, he lost the sight of his right eye and is, therefore, now totally and permanently blind. He claims $20.00 per week for 400 weeks and $500.00 for medical expenses, and he prays for judgment against the said employer, M. J. Walsh Boiler Scaling Company, Inc., and Central Surety and Insurance Corporation of Kansas City, Mo., alleging that the said insurance company is the insurer of the said employer.
The defendants, admitting that Cook is now totally and permanently blind, denied that any accident had occurred, contending that the loss of plaintiff's right eye resulted from the same condition which had previously caused the loss of the left eye.
There was judgment in the district court in favor of plaintiff for $20.00 per week for 400 weeks and awarding Dr. William McDonald Boles and Dr. Wallace Beil $50.00 each as expert witness fees. Defendants have appealed.
It must be conceded that the permanent loss of the use of both eyes constitutes total permanent disability. The statute as originally enacted so declared. See Act No. 20 of 1914, subpar. (c), par. 1, sec. 8, *Page 656 
which reads: "For the loss of * * * both eyes, * * * shall constitute total and permanent disability * * *."
While that provision, which definitely declares that the loss of both eyes shall constitute total and permanent disability, has been omitted from later amendments, it is now provided that the loss of both eyes shall entitle the employee to compensation for 400 weeks, which is tantamount to saying that the loss of both eyes shall be considered as producing permanent and total disability. See Dart's Stats., sec. 4398, Act No. 242 of 1928, pp. 357, 358, § 8, subd. 1(d) 10; also, Brooks v. Peerless Oil Co., Inc., 146 La. 383, 83 So. 663.
Nor is it denied that liability of the defendants, if there is liability, is in any way lessened by the fact that, prior to his employment by the Boiler Scaling Company, Cook had already lost the use of his left eye. In fact it is well settled in practically all jurisdictions that where there is a condition of prior partial disability and an accident causes additional disability which, together with the pre-existing condition, produces total disability, the employee may recover on the basis of total permanent disability. The basic reasoning on which the decisions to which we have just referred is founded, is excellently set forth in Branconnier's Case, 223 Mass. 273,111 N.E. 792, as follows:
"The employé, a man who in 1910 had lost one eye, met with an injury in 1915 arising out of and in the course of his employment for a subscriber under the Workmen's Compensation Act (St. 1911, c. 751), whereby he lost the sight of his remaining eye. The question presented is whether there was error in refusing to rule as matter of law that the total incapacity of the employe could not be attributed to the injury of 1915, because made up in part of the result of a previous accident.
"The denial of this request was right. The employe, when he entered the service of the subscriber, had that degree of capacity which enabled him to do the work for which he was hired. That was his capacity. It was an impaired capacity as compared with the normal capacity of a healthy man in the possession of all his faculties. But nevertheless, it was the employe's capacity. It enabled him to earn the wages which he received. He became an 'employe' under the act and thereby entitled to all the benefits conferred upon those coming within that description. * * *"
See, also, Schneider's Workmen's Compensation Law, Second Edition, Vol. I, page 517, et seq; and Horovitz on Workmen's Compensation, page 282 in which it is said: "Loss of a second eye, where the first was practically blind before starting the job, is clearly one of permanent and total disability * * *." Notte v. Rutland R. Co., 112 Vt. 498, 28 A.2d 378.
Thus the only questions now before us are: (1) whether there was such an accident as is relied upon by plaintiff, and (2) whether, if there was such an accident, it caused the loss of plaintiff's right eye. On those questions, which involve the determination of issues of fact, our Brother of the District Court was very strongly of the opinion that there had been an accident and that the loss of the right eye had resulted from it.
The most heated of these two controversies arises over the question of whether there was in fact an accident. Plaintiff, of course, maintains that there was, while defendants assert that the loss of plaintiff's right eye resulted from natural causes, to-wit: the diseased or defective condition of the eye which, by mere coincidence, came to a focus on that day; that not only there was no trauma, but if there was any trauma, it played no part in producing the result.
Counsel for defendants point out that the record contains no evidence whatever which corroborates plaintiff's story that he was struck in the eye or on the head by the corner of a piece of beaver board, and in addition to calling our attention to the lack of corroboration of plaintiff's testimony, they point out what they declare are grave contradictions and inconsistencies in plaintiff's own recital of the occurrences. They say, for instance, that in his petition plaintiff alleged that he was struck in the eye — and we call particular attention to the preposition "in". And they also say that he alleged that at that moment he exclaimed "in the hearing of his fellow employees, 'That doggoned thing hit me in the eye'." *Page 657 
Counsel say that when it became apparent that the physical condition of the right eye indicated that the blow, if there was one, could not have been to the eye itself, he conveniently changed his story and said that he had been struck on the head near the eye.
Our attention is also directed to the fact that although plaintiff alleged in his petition that he had made the above quoted remark in the hearing of his fellow employees, not one of those employees was produced to corroborate the fact either that there had been an accident, or that plaintiff had made any such remark. When it appeared that plaintiff realized that his statement in that regard would not be corroborated and he was asked to name one employee who had been present, he said that the employee who had been present was known as Snow Powell. Later, however, when he realized that Powell would not testify that he had heard such a remark, he said that just at that moment Powell had gone to a spot some little distance away.
Counsel for defendants lay great stress on an incident which may have some bearing on determining whether or not plaintiff was telling the truth throughout his testimony. He seemed determined to prove that prior to the alleged accident he had been able to see well out of his right eye, and in order to prove this he testified that on that morning, before the accident, he had read in the Times Picayune an article by George Matthew Adams, and he proceeded to recite in detail what Mr. Adams had said. There is very grave doubt as to whether Mr. Adams had ever written any such article and surely nothing along the lines testified to by plaintiff appeared in Mr. Adam's article on that morning.
In addition to these rather startling inconsistencies and contradictions, it seems to be quite evident that there was no external evidence of any blow either in the eye or on the head, or anywhere else. Dr. Arthur Lee Whitmire, to whom plaintiff reported the next day, says that "there was no indication of trauma," and no other doctor, nor anyone else said that there was evidence of any external indication that he had sustained any such blow. It must be remembered, however, that the doctors other than Dr. Whitmire did not see Cook until long after the day on which he alleges he sustained the injury, and it is probable that even if he had sustained any injury producing external evidence, that evidence would have disappeared before any of the other doctors saw him.
An attempt is made to make little of the testimony of Dr. Whitmire, who was a regular company physician of the employer, because of the fact that he had no independent recollection of having examined Cook. He said that he could testify only from his notes, but, with the aid of the notes which he made at the time, he stated that he saw no evidence of trauma and he made a notation reading "non-traumatic." When we notice that he made this notation in spite of the fact that Cook gave him a history of having been struck in the right eye by a piece of lumber, we become convinced that there was no such evidence of any blow.
In spite of the attack on the testimony of Dr. Whitmire, which is based on the charge that he was required to see a great many other patients on that morning and that, therefore, he gave Cook only a cursory examination, we feel convinced that he did make a sufficient examination to determine that he could see no external proof that Cook had been struck, and the fact that he did not treat him is explained by his statement that Cook was totally blind and that he knew of no treatment which would have had any effect.
To return for a moment to the attack on the story told by plaintiff, let us say that a great part of that attack is founded on the testimony of two other employees of the defendant employer. These two were Oliver Walker, usually referred to as "Curley", and James Powell who, throughout the record, is referred to as "Snow". The testimony of these two witnesses tends to contradict Cook and to throw suspicion on his veracity. If they are to be believed, then it is highly improbable that Cook sustained any injury at all. However, we find that the district judge was unable to believe either of these two witnesses, and in his reasons for judgment, said that he had *Page 658 
"followed their testimony very closely." He made the following statement concerning these witnesses: "* * * I followed their testimony very closely. Insofar as 'Snow' is concerned, I could not resist dictating into the record at the time my observations with reference to his nervousness on the stand. I even interrogated both 'Snow' and 'Curley', particularly 'Curley', and their testimony is so unsatisfactory — as a matter of fact, it is incredible in my opinion — that I just can not believe anything that they say. On the other hand, the plaintiff has impressed me that he is telling the truth; that an accident did take place."
Our own reading of the record would have left us much in doubt as to whether Cook gave the true version and truthfully recited the occurrence of the accident, but in view of the conclusions of our Brother below that he did not believe the two witnesses referred to and that the testimony of Cook impressed him very favorably, we find ourselves unable to reach the conclusion that the finding of the district judge on this question of fact should be reversed.
Counsel for defendants call attention to several cases, in each of which it was held that in compensation cases, as well as in all others, the plaintiff must successfully bear the burden of proof and must make his case certain by a reasonable preponderance of the evidence. They cite Tickles v. E. I. Dupont De Nemours Company, La. App., 191 So. 764, 765, in which the Court said: "Plaintiff's testimony that he did have such an accident is not supported by any other witness and he has contradicted himself in so many instances that it would be difficult indeed for the court to accept his lone statement on that, the all important point in the case. Not only however does his testimony stand alone but it is contradicted by the two witnesses called by him to corroborate it."
They also call attention to Tullis v. United Carbon Co., La. App., 142 So. 307, 308, in which the Court said: "Courts cannot decide cases on possibilities, even though it be a compensation case in which we are always most liberal in construing the law, as well as the facts. * * * It is therefore incumbent upon the plaintiff in this case to prove by a preponderance of testimony the possibilities above alleged * * *."
Counsel for defendants also point out, too, that in Womack v. Highway Const. Co., Inc., 18 La. App. 111, 137 So. 210, 212, the Court said: "The law is clear that it is incumbent upon the plaintiff, in a suit under the Workmen's Compensation Act (Act No. 20 of 1914 as amended), to prove by a 'preponderance of the evidence' — that is, with legal certainty — the fact that an accidental injury was sustained * * *."
There is no doubt that the burden rests upon the plaintiff in a compensation case to make his case certain by a reasonable preponderance of the evidence, and that this burden requires plaintiff to do more than to show the mere probability that there was such an accident. But if plaintiff is to be believed, then he has done this and has shown that there was an accident, however slight it may have been. In many cases it may be impossible for a plaintiff to make his case certain beyond the shadow of any possible doubt and all that he is required to do is to convince the Court by a reasonable preponderance of the evidence that in all probability the occurrence took place as recited by him.
In addition, however, to showing that there was an accident, plaintiff in such a case as this must go further and show by the same reasonable preponderance that in all probability the ensuing disability resulted from the injury.
In view of the finding below and of the evidence to which we have referred, we find that there was an accident, and we thus pass on to that second question; whether the accident caused the loss of the right eye.
It is necessary that we have an understanding of exactly what was the condition of the right eye both before and after the alleged occurrence, because all of the doctors agree that considering the condition of the eye before the occurrence, even without an accident of any kind, it is quite possible that the use of the eye could have been entirely lost as a result of the degenerative process which was then in progress. All of the doctors agree that Cook, many *Page 659 
years before, had lost the use of the left eye and that the right eye was, to a tremendous extent, already affected with myopia, which doctors say is nearsightedness.
There is no doubt that the loss of the right eye resulted from what is known as retinal detachment. The evidence shows that where a patient suffers with myopia, the eyeball is longer than normal. We take that to mean from front to rear. The eyeball seems to be surrounded by two coats, the retina being the inner coat. As a result of myopia, the eye instinctively attempts to focus, with the result that the front part of the ball extends forward and thus the outer coat, being attached to the inner, pulls the inner part of the ball forward to such an extent that in many cases the inner coat separates itself or becomes detached from the outer coat. When this detachment becomes complete, the patient loses completely the sight of that eye. The doctors agree that in many instances where the myopia is as pronounced as it was in Cook's case, the detachment of the retina may result without any trauma at all, but they all agree that the detachment is more apt to occur when this stretching process is in progress and some blow or shock is sustained by the eye. All of the doctors agree that this final detachment may result from a blow and the doctors produced by the plaintiff, Dr. Wallace C. Beil and Dr. W. M. Boles, both seem to think that a very slight blow, even a rubbing of the eye may some times cause the final separation.
As we have already said, defendants are certain that the final separation resulted naturally and by mere coincidence at that time, whereas plaintiff is certain that the final separation resulted from the accident about which he testified. If it is true that a blow might bring about the final result, and since we have already found, following the conclusions reached by the district judge, that there was a blow of some kind, we are faced with the necessity of determining whether the evidence that the blow produced the ensuing blindness is sufficiently conclusive to justify a judgment in plaintiff's favor.
Whether in the case at bar the jolt or blow to the head or to the eye did in fact cause the final detachment is a question which no one can answer with absolute certainty. We can only take into consideration all of the surrounding circumstances and the ensuing blindness in an effort to determine whether the probability that the accident did cause the final detachment sufficiently outweighs the possibility that it did not.
As the Supreme Court said in Robichaux v. Realty Operators,195 La. 70, 196 So. 23, 26, it is not necessary that an occurrence produce immediate result in order to be termed an accident. It was also held in that case that an occurrence of seemingly very slight importance might produce an unfortunate result and that if that occurrence was something which occurred unexpectedly and not in the usual course of events, it might be termed an accident. On these points we think the language used by the Supreme Court is most convincing and we therefore quote from that opinion at length. "There is, of course, some doubt that an accident, such as the plaintiff described in his testimony, actually happened; just as there is, essentially, some such doubt in all cases where the injury complained of might have resulted from some other cause, and where the alleged accident did not at first seem to be a serious accident, and particularly where the plaintiff is the only person who could have witnessed the accident. The testimony of the plaintiff in this case seems plausible and is corroborated in some measure by the disastrous consequence and the events which followed so quickly after the alleged accident. It is not necessary that an accident should seem immediately to be something serious in order to come within the definition in Section 38 of Act No. 20 of 1914, as amended by Act No. 38 of 1918. The word 'accident' is there defined as an unexpected or unforeseen event, happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury. That is what happened to the plaintiff in this case, unless he testified falsely. Our conclusion is that his testimony and the corroborating circumstances furnished sufficient proof that the injury which resulted in the loss *Page 660 
of his finger was caused, or superinduced, by an accident, in the meaning of the statute."
Let us say in conclusion that we have no doubt at all that if all of the doctors had thought that there had been an accident such as Cook describes, they would have felt that there was grave probability that the loss of the eye had resulted from that accident. Some of them first reached the conclusion that there had been no accident and then, on that premise, based their opinion that the loss of the eye had not resulted from accident but from natural causes. We cannot but conclude from a reading of the testimony of all of them that had they been certain that an accident had occurred, they would have felt reasonably certain that the loss of the eye was the result thereof. At any rate, in view of what the Supreme Court has said in the Robichaux case, supra, and in view of all the circumstances here shown, particularly the loss of the use of the eye so shortly after the alleged occurrence, we conclude that the one was the cause, the other the result.
It is conceded that the rate of pay at which plaintiff was employed would entitle him to the maximum payments, to-wit $20.00 per week.
We find no serious controversy over the allowance of expert's fees to the two doctors. Consequently, it is ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellants.
Affirmed.