No. 2615

Second Circuit

ASHCRAFT v. LOUISIANA CENTRAL LUMBER COMPANY

(May 7, 1926, Opinion and Decree)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Master and Servant —Par. 160 (g).

Where the plaintiff, an injured employee suing for compensation under the Employers' Liability Act No. 20 of 1914 ten years after the accident happened, becomes temporarily insane, although he had worked continuously during that ten years period, a plea of prescription of one year under Subsection 1 of Section 31 of Act No. 20 of 1914 should be sustained.

2. Louisiana Digest—Master and Servant —Par. 160 (j).

The plaintiff, an injured employee under the Employers' Liability Act No. 20 of 1914, bears the burden of proof to establish the fact that the wounds received by him were the cause of his collapse.

Appeal from the Eighth Judicial District Court of Louisiana, Parish of Caldwell. Hon. F. E. Jones, Judge.

Action by William Ashcraft against Louisiana Central Lumber Company for compensation under the Employers' Liability Act No. 20 of 1914.

There was judgment for defendant on a plea of prescription and plaintiff appealed.

Judgment affirmed.

Long & McSween, of Shreveport, attorneys for plaintiff, appellant.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellee.

WEBB, J.  On October 15, 1925, the plaintiff brought this action to recover compensation under the Employers' Liability Act (Act 20 of 1914 and amendments) for injuries alleged to have been received while in defendant's employment, etc., and to have caused total disability to do work of any reasonable character.

He alleges that in the month of September, 1917, while he was engaged in his employment, master mechanic and superintendent of defendant's machine shops, and while attempting to correct defects in a welding machine, the acetylene tank exploded, causing him to receive fractures of the face, head and skull, and that as a result of said wounds he became temporarily insane on June 10, 1925, and totally disabled from doing any work of a reasonable character.

The defendant excepted that plaintiff's petition failed to state a cause of action, plead the prescriptions of one year and six months, and answered denying the allegations of plaintiff's petition.

The exceptions and pleas being embodied in the answer, the cause was heard on the merits, and the plea of prescription sustained, and plaintiff's demand rejected, from which plaintiff appeals.

## OPINION

On trial it developed that the explosion of the acetylene tank occurred a short time prior to September 6, 1915, rather than in September, 1917, as alleged in plaintiff's petition. However, it is contended that, regardless of the date of the accident, plaintiff is entitled to recover if the evidence establishes that he is disabled and such disability is the result of wounds received by him at the time of the explosion, and that the disability occurred within one year prior to the date of suit.

The evidence establishes that plaintiff did receive some wounds about the head and face at the time of the explosion; that he was unconscious for a period of a few minutes, and was temporarily disabled for about ten days, after which he returned to his employment, in which he continued during the years 1915, 1916, 1917, 1918, 1919, 1920, 1921, 1922, 1923, 1924, and until June 10, 1925, receiving for his services the same or a larger salary than before the accident.

The evidence further establishes that within a short time after the accident, thirty or sixty days, one of plaintiff's eyes was pulled upward, in which position it remained, and plaintiff's wife states she wiped blood from plaintiff's eyes and ears at the time of the accident, that he was unconscious for about one hour, and was temporarily disabled for about thirty days, and had suffered with headaches, nervousness and moody spells since the accident, finally culminating in temporary insanity in June, 1925, in which condition he remained until September, 1925.

The physicians for plaintiff were of the opinion that he was disabled at the time of the trial, but it is very difficult to determine whether they base their opinion on the condition of his eyes, which they were of the opinion caused double vision, or the history of the case showing a nervous collapse and the danger of its recurrence should plaintiff undertake employment.

The fact is that these physicians based their opinion on an erroneous statement of the history of the case, being under the impression that plaintiff had not worked steadily since the accident, concluding that the injury to his eye had to some extent disabled him and that this partial disability became total when he suffered the nervous collapse; while the

fact was that plaintiff had worked for more than nine years with his eye in the condition in which it was at the time of the trial without any apparent inconvenience.

We are of the opinion, however, that after the plaintiff suffered a nervous collapse, that necessarily he was disabled to some extent and that the defendant recognized this fact when it refused to permit plaintiff to take up his employment.

As to the cause of plaintiff's illness the physicians called by him said in part:

Dr. J. D. Young:

"Q. Doctor, this man claims that some several years ago he received a shock in an explosion that caused him to bleed from the ears and eyes and finally developed into insanity in June of 1925 as you have related; do you think that your examination and physical findings coincide with that history?

"A. I do.

"Q. Could you find anything to account for it except the trouble that he mentioned?

"A. None whatever."

Dr. E. L. Sanderson:

"Q. From the history that he gave you of this accident in 1917, could that account for the conditions that existed or occurred in June, 1925, the condition that you find at this time?

"A. Yes, taking the history as being true, then what follows would be fairly naturally the consequence."

Dr. G. H. Cassity:

"Q. What in your opinion is the disability caused from?

"A. Well, my judgment is that it was caused by the injury. My judgment is that

they gave a true history of the case, which was rather a logical history for people without a medical training to have given if it had not been true."

The opinions of Doctors Sanderson and Cassity appear to have been based upon the history of the case which was in substance the same as shown by the evidence of plaintiff's wife as stated above, while the opinion of Doctor Young appears to have been based upon the history of the case as stated and an examination which disclosed that there had been some disturbance of plaintiff's nerves, and an examination of an X-ray picture made by Doctor Adair of plaintiff's skull with reference to which Doctor Adair said:

Dr. M. L. Adair:

"Q. Doctor, did you examine the plaintiff in this case * * *; please state what you found?

"A. I did. (I found) anterior, posterior and lateral view of the skull; I found an apparent depression exostosis on the inner table of the skull that extended from the upper part of the frontal bone to the upper part of the occipital bone along the medial line of the head extending from the front to the back.

"Q. You found some evidence of a fracture?

"A. It is possible that it is the result of a fracture.

"Q. Would it be an old fracture or a recent fracture?

"A. An old fracture if it is a fracture.

*   *   *   *

"Q. Doctor, did you find that depression that you now say is shown in these plates at the time that you first examined the plates or after you made them?

"A. I found this apparent there; understand, I am not saying positively it is a depression, I say it is a depression exostosis that is not normally found in the skull, and from the history given I

felt certain that a fracture was in the base of the skull. I still feel that the patient had a fracture at the base of the skull from the history, but this here is so extensive I felt a doubt of the absolute positiveness of this being a depression, except that I feel positive that it is possible that it came from a hemorrhage following a fracture of the skull forming exostosis. * * * I don't think that anyone could say whether or not it was the result of a fracture, but still I feel it is possible, but the important part of the injury is the fracture to the base which is very apparent from the history. * * * I did not make an X-ray of the base of the skull because after the lapse of time the examination of the base of the skull would be of very little value anyway."

The statement of the history of the case as given to the physicians was erroneous in many respects, although it appears that their opinion was based upon their conclusion that plaintiff's skull had been fractured and that they would have been of the same opinion without regard to the time of the fracture or its immediate effects.

Other physicians called by defendant examined plaintiff and found him suffering from high blood pressure, and a test of his urine showed albumen, and they attribute his nervous collapse to these conditions, and the physicians for plaintiff admit that such conditions could be assigned as the cause of plaintiff's nervous collapse but are inclined to attribute the conditions (high blood pressure and albumen in plaintiff's urine) to a fracture of the skull which they assume occurred at the time of the explosion, basing their assumption on the statement of plaintiff's wife that she wiped blood from the plaintiff's eyes and ears immediately following the explosion, which blood is assumed to have come from the eyes and ears and not from the bleeding wounds on plaintiff's face which the evidence establishes existed at the time plaintiff's wife stated she wiped blood from his eyes and ears.

The plaintiff bears the burden of proof to establish that the wounds received by him in 1915 were the cause of his collapse in 1925, and the most which the testimony indicates as to this is that if the plaintiff's skull was fractured by the explosion in 1915 the collapse suffered in 1925 may be attributed to the fracture.

Ten years is a long period in the life of a man, and where it is shown that following the accident the plaintiff had for such a period been continuously employed in a responsible position the duties of which he had discharged without complaint to his employer of any inconvenience, we do not think that the court could be justified in attributing the cause of his disability to the accident on any such proof as is offered in this case.

We do not say, however, that even if the evidence had established that the cause of plaintiff's, inefficiency or disability in 1925 should be directly attributable to the injuries received in 1915 that under the evidence showing that he had been continuously employed at the same or a larger salary than before the injury, that he would have the right to recover under the statute.

The judgment appealed from is affirmed.