## WRIGHT v. LOUISIANA GAS & FUEL CO.*
### No. 4260.

Court of Appeal of Louisiana. Second Circuit.
April 5, 1932.

Wm. C. Boone, of Homer, for appellant.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellee.

DREW, J.

Plaintiff alleged that on January 25, 1930, he sustained an injury arising out of and in the course of his employment with the defendant, which injury resulted in total disability to do work of any character. He prays for compensation in the sum of $20 per week for a period of four hundred weeks, together with medical expenses in the sum of $250.

*Rehearing denied May 4, 1932.

The principal allegations as to his injuries are as follows:

"* * * and while on the premises and works of the said defendant company, and while lifting and carrying a four-inch joint of line pipe some 25 feet in length, weighing between 300 and 500 pounds, with a fellow workman by name of Gray Powell, and while in mud, water and some oil almost to their hips, and while carrying said pipe along a twelve-inch plank for some distance, your petitioner was most severely injured in the right leg, knee and hip, right side of his body, right shoulder and back and backbone, causing a bursting of one or more blood vessels in his right leg about the knee, his back being severely wrenched and strained, possibly causing traumatic arthritis of the lower lumbar spine and right sacro-iliac joint with displacement of his vertebrae, and permanently totally disabling petitioner to do work of any reasonable character, causing considerable pain and anguish, all without fault of petitioner.

"VI. That your petitioner, while carrying the said pipe for a distance of nearly one mile, being in position where he could scarcely walk with it and unable to turn it aloose for fear of his life being taken, the said plank being slippery and muddy, turning sidewise whenever petitioner stepped upon it with the great weight upon his shoulder, forced to shift the weight from one side to the other from time to time, twisting and straining his back, shoulder, backbone, hips and legs, severely paining and injuring him in his right groin, pelvic regions, shoulder and other parts of his body on his right side.

"VII. That from the time of his said injury until the present date your petitioner has suffered continuous excruciating pains through his hips, pelvic and sacral regions, also in his back and lower limbs, as well as in his shoulder, back, leg and other parts of his body, and that his condition, although treated by skilled physicians, has continued to grow more serious, causing him to suffer severe and more excruciating pains and anguish as time passes, and from time to time confined to bed therefor.

"VIII. That due to the aforesaid injuries your petitioner has been wholly and permanently incapacitated for the performance of labor of any kind or character whatsoever, and he will not be able to make a living wage.

"IX. That on account of the aforesaid injuries your petitioner's nervous system is completely shattered, and he is unable to rest day or night.

"X. That the aforesaid accident was of such severity that the same was immediately known by your petitioner's employer, his agents and servants around him, and that there was such physical pain and anguish that the attendance of a licensed physician was finally required within forty-eight hours, your petitioner seeing Dr. Reed at Spring Hill, Louisiana, and other physicians, off and on for some six weeks or more, and due to plaintiff's financial condition he has not been treated as should have been treated, and that since the time of the accident your petitioner has been in bad health, nervous, unable to sleep, in poor physical condition, and will never be able to do manual labor of reasonable character or of that required around oil and gas fields again."

Defendant in answer denied that plaintiff received any injury in its employ, and alleged that plaintiff made no complaint at the time of his alleged injury to any one, and continued to work doing heavy manual labor for a period of at least thirty days without in any manner notifying the defendant, its officers or agents, of having received any injury. It further alleged that, when plaintiff left its employ, he complained of a varicose vein in his right knee, but made no complaint of any other pain or disability, and that the varicose vein was treated and cured. It also averred that said vein was not the result of any injury received in its employ and did not produce any disability to do work.

It is admitted by defendant that plaintiff was in its employ and performing services within the course of his employment at the time of his alleged injury.

The trial in the lower court resulted in a judgment rejecting plaintiff's demands, and he has prosecuted this appeal.

There can be no doubt about the total disability of plaintiff to perform work of any unreasonable character at the time of the trial in the lower court. Although he had no organic trouble that could be found by any of the doctors who testified, no broken bones, sprains, or bruises, he was almost totally paralyzed on the entire right side of the body, arm, leg, and foot, and had very little use of either of said members. All the doctors who testified for both plaintiff and defendant diagnosed his case as "hysterical paralysis," traceable to a mental condition and not a physical disorder. Whether plaintiff's condition was caused by a mental disorder or a physical disorder is immaterial, if either was brought on by the accident while he was in the employ of defendant and acting within the scope of his employment. However, it is incumbent upon plaintiff to prove that the accident alleged actually happened. The record discloses the following facts:

On the morning of January 25, 1930, plaintiff, his foreman, Mr. Cox, and six other employees, made up a gang whose duties were to set meters in the vicinity of the Cartersville field. From their meeting place to the place where the gas meters were to have been set was a distance of nearly a mile, through the

bottom and across the stream, known as "Bodcaw." Due to the low nature of the country, there had been constructed a plank walk consisting of 2x12 boards and 2x10 boards, elevated above the ground and water. The gang was instructed to carry their tools, meter, and the two necessary joints of four-inch pipe, shown to have been twenty to twenty-five feet in length and weighing from three to five hundred pounds each. A man by the name of Thorne, who was not present to testify, went ahead with the meter. Next was plaintiff with one end of the joint of pipe on his shoulder, followed by Gray Powell, with the other end on his shoulder. Behind Gray Powell was another Mr. Powell and Mr. Brailey with a joint of pipe, and Mr. Cox, the foreman, and Mr. Fairclaus, carrying the tools, and then plaintiff's brother.

In this manner, they proceeded along the plank walk for some distance until they reached a stream, near the main channel of Bodcaw, and, when crossing this stream, it is claimed by plaintiff that his left foot slipped off the plank walk, forcing all his weight, together with that of the pipe he had on his right shoulder, to be supported by his right leg and his left hand, with which he caught hold of a cable of wire stretched across the stream just above the plank walk. He claims that he was forced almost to a sitting position, when his foot slipped off the plank, but managed to hold the pipe on his right shoulder and pull himself up straight again, and continue across the stream where the pipe was thrown down.

All the other members of the gang unloaded their burdens at this place, where the pipe, tools, and meters were loaded in a wagon, and carried to the destination. Plaintiff claims that, when his foot slipped off the plank walk, he was thrown in a strained position, causing him the injuries he claims to have received at that time and afterwards developing into his present condition.

Plaintiff is corroborated as to his foot slipping off the plank walk by Gray Powell, who was carrying the other end of the pipe. The other four witnesses, who were coming along behind him, testified there was nothing to obstruct their view and they did not see any such accident as was related by plaintiff and Gray Powell. Plaintiff's brother, who was far in the rear, testified that he could not see.

After the gang had crossed the stream and unloaded their burdens, they congregated and rested for a short time, all engaged in the usual conversation. Plaintiff testified that at the time he discussed the accident and the near seriousness of it with the entire gang, of which Mr. Cox, his foreman, was a member and present. He is corroborated by Gray Powell and his brother in this instance. The four other members of the gang who testified, including the foreman, deny that plaintiff mentioned the accident or complained of any pain or injury. The entire gang proceeded on to the work of setting meters, and one witness testified that plaintiff was singing and happy.

Plaintiff continued to work from that day until the 23d of February, performing the usual labor, at which time he quit. It is true that he had a spell of fever that kept him in bed from February 7th to 10th, and that he did not work on two Sundays, viz., February 2d and 16th. That plaintiff did not complain of the alleged accident and injury is further corroborated by other witnesses who worked with him the same day, and for the remainder of the time he was with the defendant company. All of them testified that plaintiff did not speak of the accident and did not complain of any pain. He rode with Mr. Cox and other witnesses on the afternoon of the alleged accident and made no mention of an accident or of any injury that he had received, and a number of the witnesses who were in the gang with him and worked with him after the day of the alleged injury testified they did not know that plaintiff claimed he had been injured in an accident until after he had filed suit in the early part of May. There is one other unusual thing about plaintiff's testimony, and that is he did not in his petition allege the injury was caused to him by his foot slipping off the plank walk. There is nothing in the petition that would suggest the accident alleged to have happened as testified to by plaintiff.

Although plaintiff has alleged many injuries that he received in the alleged accident, he did not call on a doctor until some time in February. He then went to Dr. Browning, and only complained of an injury to the right knee. An examination disclosed a small varicose vein in the space behind the knee, called the popliteal space. He did not complain of pain, only complained of that vein. The doctor told him it amounted to nothing and sent him on his way. Two or three weeks later, he returned and complained only of the vein, which he called a ruptured vein. The doctor did not find it to be anything but a small varicose vein, amounting to nothing, and again sent him on his way. He later went to Dr. Reed, complaining only of this vein. He was sent to Dr. LeDoux, who sent him back to Dr. Reed who treated the vein by giving him four injections and dismissing him. Plaintiff later called upon Dr. Browning and exhibited the vein to him, stating it was in fine shape and well, with which Dr. Browning agreed. He stated to Dr. Browning at that time that he was well and satisfied. The numbness and paralysis from which he was suffering at the time of the trial did not come on plaintiff until several months after the date of the alleged accident.

The great preponderance of the testimony is that no accident occurred, as claimed

by plaintiff, and it is corroborated by a preponderance of the evidence that he did not report the accident and injury, together with the facts that he continued to work without complaining of pain or injury, and his failure to report any injury to his doctors, other than the varicose vein.

The record also shows that plaintiff performed heavy manual labor in July of the same year and at different times during the year, without complaining. What caused the mental disorder that has resulted in plaintiff's condition is not shown by the record. However, plaintiff has failed to prove that anything occurred or that there was any accident while he was in the employ of defendant that caused him any injury that could have caused the mental disorder. This was incumbent upon him.

█ Plaintiff has asked in the alternative that we remand the case to hear the testimony of the witness, Thorne, who was the only member of the gang who did not testify. His testimony, as shown by plaintiff, would only be cumulative and, under our finding as to where he was at the time of the alleged accident, we see nothing that could be gained for plaintiff by his testimony.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with costs.