**WARREN v. LOUISIANA GAS & FUEL CO. et al.**

No. 3995.

Court of Appeal of Louisiana. Second Circuit, Second Division.

June 11, 1932.

Wm. C. Boone, of Homer, for appellant.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellees.

TALIAFERRO, J.

Plaintiff sues defendants for compensation at the rate of $20 per week for 400 weeks, alleging that on or about December 17, 1929, while in their employ, and in the course of that employment, he was seriously and permanently injured and forever disabled to perform any work whatever, and especially was he disabled to do the heavy work of oil fields in which he was engaged when injured. He alleges that on said day he was one of a crew of workers engaged in laying a section of 6-inch pipe 20 feet long, for defendants, at or near Cotton Valley in Webster parish, and that, while said crew was in the act of depositing the pipe in a ditch or trench prepared for that purpose, they allowed it to fall down into said ditch or trench, in which plaintiff was standing, jamming his left leg near the ankle against the ditch bank, thereby "bruising, rubbing off the hide, considerably injuring the flesh, causing an eruption on his leg, bringing on an eczema, and will finally develop an incurable ulcer, nearly breaking the bone, possible fracturing the bone, causing considerable pain and anguish."

By supplemental petition he amplifies and enlarges upon the kind and character of the injuries and disabilities which have followed the accident to him.

Defendant Palmer Gas Products Corporation denies that plaintiff has ever been in its employ. There is no evidence whatever in

the record connecting that company with plaintiff's employment or accident; no mention of it being made beyond the bare allegations of the petition. We are at a loss to know why this company was joined as a defendant. Hereinafter the Louisiana Gas & Fuel Company will be considered as the only defendant in the case. That company admits employment of plaintiff on the date and at the place named in his petition, but denies that he was injured while thus employed. It admits that through its insurer plaintiff was paid $151.63 as compensation, and, in addition, that it has paid medical and hospital fees incurred in treating plaintiff for the injury sued for, in excess of $250, which payments are more than was due on account of the alleged injury.

Defendant further pleads that prior to and at date of plaintiff's alleged injury, and since, he suffered with varicose veins in both legs; that, after reporting his alleged injury to defendant's representative, as is its custom, he was sent to a physician for treatment, and was afterwards sent to Highland Sanitarium, in Shreveport, for further medical attention, and was discharged by the physicians attending him, who reported that he had entirely recovered from the effects of the alleged blow to his leg and was suffering no disability therefrom; that further medical examination of plaintiff since the filing of this suit shows that he is not suffering from a disability of any kind, and therefore is now able to do manual labor of any reasonable character. In the alternative, defendant avers that, if plaintiff is now suffering from any disability, it is due entirely to the varicose veins in his legs, which condition was not brought about nor aggravated by an injury received in the course of his employment with respondent.

The lower court rejected plaintiff's demand and dismissed his suit. A motion for new trial was filed by him, which was denied. · He has taken and prosecutes this appeal.

In the motion for new trial it is charged that the judgment is contrary to the law and evidence in the case.

It is also averred that two of plaintiff's witnesses, who had been summoned, did not appear at the trial, and that his counsel inadvertently announced ready for trial, not knowing of their absence; and that a new witness had been discovered; all of whom, it is alleged, were present when plaintiff was injured on December 17, 1929, and would testify that they saw the accident. As to the absence of the two witnesses who had been summoned, plaintiff is clearly not entitled to new trial for that reason. It was his business to see that they were present before going to trial. As to the third witness, the motion only alleges "he knew of the accident." It is not alleged that he was present and saw the accident. Such testimony could have no influence upon the issues in this case. At best it is merely cumulative.

We might remark here that neither plaintiff nor his witnesses testified that either of the three witnesses named in the motion for new trial were present at time of the alleged accident, though some of them were asked to name every one present at the time.

We think the motion for new trial properly denied.

The testimony of nine witnesses, all of whom say they were present at the place and time plaintiff is supposed to have been injured, and who were all in the same position to hear and see what transpired, is amazingly contradictory. This testimony cannot be reconciled. The only rational solution to it is to hold that the witnesses of one side have done violence to the truth, or are very badly mistaken in their evidence.

Plaintiff's version of the alleged accident may be best determined from the following testimony given by him: "A. I was working for the Louisiana Gas & Fuel Company, at their plant at Cotton Valley and we were fixing to make a connection with a six inch pipe and the pipe was on the ditch that we were in and there was water and mud and oil in the ditch and we were fixing to pick that pipe up off of the bank and put it in and it slipped loose and it came down and cut my left leg in that ditch and mashed it, mashed off a piece of hide about as big as a half dollar I guess."

He states that it happened in the morning of December 17, 1929, at about 8 or 9 o'clock, and he immediately got out of the ditch, went over to the water cooler, some 30 feet away, and got a drink of water, and, returning, met Mr. Cox, crew foreman, and informed him of the accident and injury, stating to Cox that he did not think it serious; that at the suggestion of Mr. Cox on December 28th consulted Dr. Browning, company physician at Cotton Valley, who treated the injured leg for several days without favorable results; that he was sent to the Highland Sanitarium in Shreveport, where he was in charge of Dr. Hendricks 3 or 4 days; that Dr. Hendricks advised him to return home and stay off of the wounded leg about 10 days, and, if he did not improve in that time, to return to the Sanitarium, which he did, and remained there 15 days, and was again sent back to his home. He states that he cannot stand on his feet since the lick on his leg; that it hurts him, swells up and itches until he cannot rest at all; turns red, almost black, when he stands on it for a while, and the veins enlarge; that a scar was left where his leg was injured, which is painful and itches. He admits that the varicose condition in both legs has existed for 3 or 4 years. Some of the physicians think the condition had existed for 9 or more years.

Plaintiff introduced four witnesses who corroborated his own testimony as to the time,

place, and nature of the accident to him. These were Henry Le May, De Witt Rogers, Harold Wright, and Earl Wright. The last two were working for defendant at the time, while the first two had been employed, but at time of the alleged accident had been "laid off," and say they were present for the purpose of trying to secure employment. These witnesses testify that, while the section of pipe was being lowered into the ditch, it slipped from the hands of those handling it and dropped on plaintiff's leg. One of them says it "smashed his leg," while another states that it "peeled the hide off of his leg about an inch in diameter." All of them remember hearing plaintiff tell Cox about the accident immediately after it happened, and saw him expose the wound to Cox's view by raising his breeches leg. Earl Wright says that plaintiff remarked that "it (referring to his leg) was mashed pretty bad." Plaintiff says he told Cox it was not serious.

In contradiction of plaintiff's testimony, and that of his four witnesses, concerning the accident, defendant introduced the testimony of O. D. Cox, crew foreman, supported by that of four members of the crew, all of whom state that the pipe was laid the evening of December 15th, and not the morning of December 17th, as plaintiff contends, that they assisted in putting the pipe in place, and it did not fall on plaintiff's leg, and that they heard nothing of the supposed accident until long after that date. All of these witnesses are positive that at the time the pipe was placed in the ditch that Earl Wright was working at the welding machine some 200 yards away, and that Harold Wright was engaged at the compression plant, equally distant. None of these witnesses recall seeing Rogers and Le May there on that occasion.

Cox testified that he knew nothing of plaintiff's injury until December 26th, being informed by one Gris Powell, a laborer, and he immediately sent him to the company's physician, Dr. Browning, for treatment. This witness states that the section of pipe weighed around 500 pounds, and is unable to understand how it could fall on any one when the manner and method of laying it in the ditch is considered. He explains this is done by laying a section of 4-inch pipe on and at right angles to the ditch, and then the 6-inch section is rolled on top of and across this 4-inch pipe; then rope is passed under each end of the larger pipe, and the laborers, holding both ends of these ropes, gradually lower the pipe in place—the process making it unnecessary for any one to be down in the ditch at the time.

Other witnesses, employees of defendant, working about the plant from before December 15th until after the 17th of that month, state that during that period they never heard anything about plaintiff being injured. They were not in the crew laying the pipe.

Six physicians gave evidence in the case. All of them at different times had examined plaintiff's legs; two of them treated him; all agree that he is afflicted with a very bad case of varicose veins in both legs, and that his condition at time of trial was such that he could not do manual labor, nor perform any labor requiring him to stand on his feet.

Dr. Boyce said that he found, in addition to the varicose veins, a skin ulceration on one leg, which he diagnosed as eczema existing on an old scar on the shin; that eczema is a natural consequence of the leg condition; that the eczema was not the cause of his inability to work but the "varicose veins that produce the symptoms"; that on account of the varicose veins he was not suited to do oil field work when injured; that, if injured, the leg condition was aggravated and made worse; that, if properly treated, plaintiff's affliction, most probably, could be cured; that, if the varicose condition is removed, the eczematic condition will disappear. He thought the veins of the left leg had enlarged and the leg itself inflamed as a consequence of the injury. He also stated that varicose veins are an abnormality rather than a disease, coming on gradually, being progressive in their nature; growing worse, if not competently treated, that it was not unusual to see the veins larger in one leg than the other, and that he observed nothing on plaintiff's leg to prove that he had been injured.

Dr. Cassity examined plaintiff on May 8th, following the injury in December, and also three or four times since that date. He stated that plaintiff gave a history of the alleged injury wherein he stated that the pipe "fell against the shin of the left leg causing some abrasion of the skin over an area as large as a fifty cent piece; that he continued to work until December 28th," when he went to a doctor for treatment. Plaintiff's blood pressure and heart action were found to be fairly normal and the urinalysis was also normal. The scar on the skin was in the same condition, and had the same appearance when the case was tried (December 4, 1930) as it had when he first examined it. In other respects Dr. Cassity's testimony is about the same as that of Dr. Boyce. He estimated there was 75 per cent. disability to plaintiff, one half chargeable to the varicosity of the veins and the other half to the ulceration of the leg.

Dr. Furman examined plaintiff's legs the day of trial. He found a "weak place, healed scar on the shin, the lower one-third of the shin, with a red area surrounding it showing that it had recently broken down and partly healed-over scar at that point"; that the scar was only partly cured, and on account of the varicose condition there would recur; that the ulcer would be simple but for the leg condition. He estimated plaintiff's disability at 75 per cent., one half of which was due to the ulcer and the other half to the varicose veins.

He did not think plaintiff should have been doing heavy work, as that would aggravate the condition of his legs.

Dr. Durham examined plaintiff on the day of trial. He found an area on the left shin about 3 inches long and 1¾ inches wide which is congested and discolored, showing that apparently an ulcer had been there which had not completely healed and was tender to pressure. He thought that, if plaintiff had been injured, that would have increased his disability. He agreed with Drs. Furman and Cassity as to the percentage of disability, and its causes.

Dr. Browning, to whom plaintiff was sent on December 28th for treatment, testified that on this date he found a congested area on defendant's left shin about 3 inches long and 1½ inches wide; that the skin was not broken, but very red, and had the appearance of an eczema; that, if plaintiff had had the injury to that limb 11 or 12 days prior, as he contends there should have been evidence of the blow on the leg; that the injured or bruised area would be dark or bluish, and, if infection set up, there would be a redness in color followed by swelling, congestion, and discharge. He further stated that plaintiff should not have done heavy work while his legs were in the condition they were when injured, and that, if he continued to work under such disability, it would be expected that he would experience pain and discomfort from the varicose condition; that he treated plaintiff for several days, and no ulcer developed on his leg. He explained that, where there is an ulcer, the tissue breaks down and sloughs, and when it heals a sort of fibrous tissue remains, and that the eczema is a red or discolored part that itches and causes irritation. He dressed the congested area of the leg several times, and was of the opinion the trouble did not arise from a blow but from the varicose veins.

Dr. Hendricks, chief of the surgical staff at Highland Sanitarium, examined plaintiff there on January 29, 1930, and on the day of trial he states that the leg condition had undergone practically no change in the interim, except that the area of discoloration on the shin had decreased some. He stated that eczema and ulcer of varicose veins could be had without a blow or trauma; that the former was caused from lack of tissue vitality, congested blood in that part of the tissues, the cells becoming very much devitalized and begin to break down; that the more destruction there is of the tissue the more breaking down of the cells which, if continued, results in ulcer. He thought plaintiff's condition could be cured. The records of the sanitarium showed that plaintiff had been there for treatment once in 1927 and twice in 1929. He endeavored to get plaintiff to allow an injection to relieve the varicosity of the veins, but he would not consent. When he examined plaintiff's leg, he saw no evidence of an injury or blow; that he was suffering with a superficial varicose ulcer which is synonymous with eczema.

There is no wide difference in the opinions of the physicians who testified. Some of them were in better position to describe and testify about plaintiff's ailments than others. All agree that an eczematic condition and ulcers are natural consequences of a bad case of varicose veins, such as plaintiff has, and are to be expected. Drs. Browning and Hendricks were in better position to testify as to plaintiff's condition, very soon after the alleged injury to his leg, than the other four physicians were. These two physicians are positive in their opinion that the condition they found on plaintiff's shin in December and January was not due to a blow or trauma, but to the varicose condition of the leg, and their testimony, coupled with other evidence in the case and many circumstances bearing upon this question, impel us to the conclusion that plaintiff's trouble is not due to the falling of the pipe on his leg, even if we assume that it did fall and bruise the leg in the manner alleged by him, a fact which the evidence does not nearly conclusively establish.

Plaintiff admits he continued to do hard labor for ten or twelve days after the date of his injury, and, even after being treated by a physician, likewise labored for eight or ten days more. If his leg developed a deep-seated ulcer that ran, it unquestionably did so after February 1st, about which time he was discharged from the sanitarium as in good condition, and, if this be true, it certainly does not appear that there is any causal connection between that condition and the alleged injury. However, Drs. Browning and Hendricks found the condition of the leg and the scar on the shin in practically the same condition at time of trial as it was when they examined him in December and January preceding. It is generally known, and established by the testimony in this case, that a wound on the shin is difficult to heal and has a tendency to recur with slight provocation. We incline to the view and hold that plaintiff suffered with this eczematic condition—superficial varicose ulcers—before the date of his alleged injury, and that by engaging in hard labor, requiring him to stand on his feet, for long periods, the condition was aggravated until the inability to do hard work came about.

There is evidence in the record establishing that in February, 1929, plaintiff brought suit against Pine Woods Lumber Company, Limited, his employer, in Webster parish, to recover compensation for 400 weeks. In that suit, as in the present one, he alleged and swore that his injuries were permanent. It is also disclosed in the present suit that plaintiff was an active witness for one of his own witnesses, Earl Wright, in the suit by that witness against the present defendant to recover

compensation, which was adversely decided to Wright by this court. Wright v. Louisiana Gas & Fuel Co., 140 So. 712. In that case the lower and appellate courts rejected the testimony of plaintiff's witnesses, including that given by the plaintiff in the case at bar.

 The judge of the lower court, as clearly disclosed from the record, closely followed the testimony of all of the witnesses. He interrogated many of them to some extent on the material issues of the case. Evidently he reached the conclusion that plaintiff's case was not made out by a preponderance of the evidence. We agree with him. Plaintiff carries the burden in a suit for compensation of proving his case.

This has been held by our courts repeatedly. The following are a few of the cases so holding: McMullen v. La. Central Lumber Co., 2 La. App. 773; Goree v. Atlantic Oil Producing Co., 2 La. App. 558; Ashcraft v. Louisiana Central Lumber Co., 4 La. App. 112; Reynolds v. Hotel Youree Co., 6 La. App. 790; King v. Rapides Packing Co., 5 La. App. 424; Dimes v. Lassiter & Co., 7 La. App. 16; Robbins v. Mengel Co., 7 La. App. 207; Rutley v. Honor & Co., 7 La. App. 164; Burrows v. Arizola Petroleum Co., 7 La. App. 704; Cook v. Uneedus Lumber Co., 7 La. App. 405.

The judgment appealed from is hereby affirmed.